Lievin Venbuvr *vs.* Lafayette Worsted Mills.

PROVIDENCE—MARCH 24, 1905.

Present: Douglas, C. J., and Dubois, J.

(1)  *Master and Servant.    Unsafe Machinery.*

In an action for negligence in permitting a mechanical "blower" to remain uncovered and in permitting the floor in the vicinity of the "blower" to become in a slippery condition, in consequence of which plaintiff, a boy of 12 years of age, slipped upon the floor, causing his hand to enter the mouth of the "blower" and to be maimed, evidence considered, and in the light of the unsupported, unlikely, and contradictory statements of plaintiff, and in the absence of any evidence that it was customary to cover or guard blowers under such circumstances:—

*Held*, that verdict was against the evidence.

(2)   *Master and Servant.   Fellow-Servant.   Concurring Causes.*

Where the negligence of the master is combined with that of a fellow-servant. in producing the injury, and the negligence of neither is alone the efficient. cause, both are liable.

(3)   *Concurring Causes.   Negligence.*

The question of concurring proximate causes is for the jury under proper instructions.

(4)   *Master and Servant.   Providing Safe Apparatus.   Question for Jury.*

The question what precautions were reasonably necessary to protect from an alleged danger from which plaintiff's injuries resulted or whether the failure. to adopt a particular precaution constituted negligence under all the facts. and circumstances shown is, in general, for the jury; but it is error to submit the question to the jury whether the failure to take certain precautions was negligence, in the absence of any evidence that such precautions were usual under the circumstances or that it would have been prudent to take. them.

TRESPASS ON THE CASE for negligence.   Heard on petition of defendant for new trial, and granted.

DUBOIS, J.   This is an action of trespass on the case for negligence of the defendant in permitting a mechanical ventilator or fan, called a blower, which it had installed by the side of and parallel with a passageway in its manufactory, to remain uncovered and unguarded; and also in permitting the floor in the vicinity of the blower to become and remain in a dangerously slippery condition, in consequence of which the plaintiff, a boy of the age of twelve and a half years, employed by the defendant, while performing his duty in the ordinary course of his employment, ignorant of the danger to which he was exposed, and exercising due care, slipped and fell upon the floor, which caused his right hand to enter into the mouth of the unguarded and uncovered blower and therein to be mangled and maimed, to his serious and permanent injury.

After a verdict for the plaintiff the defendant has petitioned for a new trial upon the grounds that the verdict is against the law and the evidence and the weight thereof; that it appears from the record that the defendant was not guilty of negligence; that it also appears that the plaintiff was guilty of contributory negligence; that it further appears that if there was any neg-

ligence it was the negligence of a fellow-servant; that it likewise appears that the plaintiff assumed the risk of the accident; that the court erred in refusing to charge the jury in accordance with defendant's second, fourth, and seventh requests; and that the verdict of the jury was excessive and unjust.

The plaintiff claims that the accident resulted from a combination of the violation of two duties which the defendant owed to him, namely: the duty of guarding or covering dangerous machinery, and that of keeping its floor reasonably safe for its employees to walk upon.

It appears that the plaintiff had been working for the defendant in its mill for three weeks prior to the accident, his duties requiring him to clean the closets and assist the spinners; that he had been generally warned against the danger incident to machinery in motion, but that he had not been warned and did not know the danger of slipping and getting his hand caught in the blower.

It is a rotary blower, and consists of an iron or steel six-spoke paddle-wheel, about one foot in diameter, enclosed for revolution in a circular iron paddle-box, open on each side thereof around the end of the axle for a space about six inches in diameter, for the admission of air, and having tangental to its circumference a flanged opening about seven inches in diameter, through which the air is expelled in its operation. This box is made to rest upon and be supported by two brackets, which are constituent parts thereof, and in position its lower portion forms a pipe ending with the flanged opening. It was set in defendant's mill in such a manner that its mouth was pointed diagonally upward at a distance of two feet and two inches from the floor. The blower is operated by belt and pulley, and in use the wheel revolves with considerable rapidity; according to the testimony of a witness "terribly fast," but at what rate of speed the testimony does not disclose. It appears that for the purpose of forcing the air to a greater distance a pipe or nozzle had been attached to the flange of the opening in the blower, and that such nozzle had been kept thereon during the greater part of the time that the plaintiff was in the employ of the defendant and until the same was removed, on

the day before the accident, by the defendant's overseer, "to put on a new pipe to get more air," but that the new pipe was not put on; that without any pipe or nozzle the distance through the opening from the exterior of the flange to the nearest paddle is seven and ten-sixteenths inches, and that the pipe or nozzle is over two feet in length. So that while the pipe was attached the interior of the machine could not be reached by a hand inserted into the pipe. The exposure of that orifice, by act of the servant and agent of the defendant, in removing the pipe from the blower and leaving them apart without substituting another in its stead, constitutes the first ground of negligence complained of.

The plaintiff alone testified to the accident and its cause; indeed, no claim is made that any other person was present at the time. His version of the accident on direct examination, as translated by an interpreter, was: "As I was going back, I went to the privy, I slipped and my head went against the wall. I had a broom in my hand, and I went to protect myself, and my hand went into the ventilator. Q. He had what in his hand? A. Pail and broom. Q. When your hand went into the ventilator, what happened? A. It made some noise, and I pulled my hand back, and I saw my fingers was cut off. Q. Which hand was it? A. Right hand." And on cross-examination he testified: "Q. Was the floor slippery all the way? A. No, it was slippery near the ventilator; there was some oil near there. Q. Did you notice it was not slippery the rest of the way? A. I was not looking at the floor, I was looking at the wall. Q. And you didn't see the floor anywhere, did you, before the accident happened? A. No. Q. And you didn't look to see what there was after it happened, did you? A. When I fell, I noticed something was bright, but I can't tell you what it was. Q. And as you was passing along the fan was on which side of you? A. At the left. Q. And you had a pail and broom in your hand? A. Yes. Q. Which hand did you have the pail in? A. Right hand. Q. And did you set the pail down on the floor before the accident happened? A. No. Q. What became of the pail? A. I let it fall when I fell."

It appears that the pail was found after the accident, upright, half full of dirt, the contents having been undisturbed, at a distance of four and a half feet from the mouth of the blower in the direction in which he was going.

Two witnesses testified, and the plaintiff denied, that he admitted to them that the proximate cause of the injury was his own act in putting his hand into the blower for the purpose of ascertaining what it was and what it did. The testimony of Lucien Massart, defendant's overseer of the mill-room, in regard to this matter was as follows: "Q. What did you do with the boy after the accident? A. Took the boy down to the office. Q. And whether he made any statements there as to the way the accident occurred? A. Yes, sir. Q. What did he say? A. He said he put his hand in the blower to see what there was in there." The other witness, Camille Lefebre, also testified concerning the same: "Q. Did you hear him say anything? A. I heard him. Q. What did he say? A. He said he had put his hand into the blower to see what it was. Q. Did he say that more than once? A. Only once in the office. Q. And after that did he repeat the same statement? A. He repeated the same thing. Q. Where? A. In the hack when we were going to the hospital. Q. He was asked not how the accident happened, but why he put his hand in there? A. Yes, yes. Q. Who asked that question? A. His cousin. Q. His name? A. Henry Venbuvr."

The defendant urges that the operation of the blower itself corroborates these admissions and contradicts the evidence of the plaintiff in denial of them; that the operation of the blower is evidenced by the injury inflicted, the plaintiff's hand being torn on the back only, from the wrist down to the finger tips, and by the fact that the blades of the fan move upward when viewed by a person facing the air outlet. It is argued therefrom that the plaintiff must not only have introduced his hand into the blower a distance of some eight inches, but that he must have turned the palm toward his body and then carried his hand for some distance upward, in order to present its back to the action of the blades of the fan to be torn in the manner described.

The defendant makes the further point that the position in which the pail of dirt was left shows conclusively that the plaintiff's story about his falling can not be true.

(2)    "It is a familiar principle that where an injury is caused by the concurring negligence of two persons, either or both may be held responsible. The application of this general rule in the law of master and servant is not affected by the fellow-servant doctrine. Where the negligence of the master is combined with the negligence of a fellow-servant in producing the injury, and the negligence of neither is alone the efficient cause, both the master and the fellow-servant are liable, and the injured servant may maintain his action against either or both together. That a master is liable for an injury to his servant caused by the concurrent negligence of himself and a fellow-servant, but which would not have happened had the master performed his duty, is clear; it is only where the negligence of a fellow-servant is the whole cause of the injury that the master is excused. And, while contributory negligence may relieve a master from liability, it must be that of the person injured; it is immaterial that the negligence of a third person contributed to the injury. If, therefore, a servant who is himself free from negligence receives an injury, caused in part by the negligence of his master, . . . and in part by that of a fellow-servant, he can maintain an action against his master for such injury." Am. & Eng. Ency. L. 2d ed. vol. 12, p. 905.

(3)    The question of concurring proximate causes is for the determination of the jury under proper instructions. McCauley v. Rhode Island Co., 25 R. I. 558; Yeaw v. Williams, 15 R. I. 20; and Hampson v. Taylor, Ibid, 83.

No evidence was offered tending to prove that it was necessary to use pipes or nozzles upon blowers of this kind, or upon rotary blowers of any kind; neither was any introduced for the purpose of showing how blowers were ordinarily used in that regard; nor was there any testimony that such pipe or nozzle was designed for or used as a cover or guard to protect persons from injury by contact with the rotating fans within it.

There was nothing outside of the testimony of the plaintiff relative to the accident itself, except the examination of the

blower made by the jury, that could have assisted them in
determining that the defendant's use of it, without such pipe
or nozzle, was negligent.

The testimony of the plaintiff relative to the slippery con-
dition of the floor and its cause, viz., the spilling of oil thereon
by employees of the defendant, was contradicted; but his
statement that he had slipped twice before upon the floor in
that vicinity stands without denial.  The spilling of oil upon
the floor by employees of the defendant, if negligent, was the
negligence of a fellow-servant for which the master would not
be liable without notice, unless it was proved to be a practice
of such duration or magnitude that notice thereof might be
implied therefrom.  *Burke* v. *National India Rubber Co.*, 21
R. I. 446.   There was no proof that the slippery condition of
the floor, which the plaintiff claims caused him to fall, was
known to the defendant; neither was there any evidence tend-
ing to show circumstances from which such condition by the
exercise of reasonable care should have come to its knowledge.
Nor does it appear that there were any defects or lack of repair
in the floor itself which contributed to the accident.  If the
plaintiff had slipped upon the floor made oily through the
negligence of a fellow-servant, without actual or constructive
notice to the defendant, as above stated, the defendant would
not be liable for any injury directly traceable to that cause, as,
for instance, if, when the plaintiff slipped and his head went
against the wall, his head had been thereby injured, the de-
fendant could not be held responsible in damages therefor.
If, instead of striking against the wall, the plaintiff's head had
struck against the blower and he had thereby received serious or
even fatal injury, in such circumstances no action could be
maintained against the defendant.  Therefore, to support this
action, the plaintiff must rely upon proof in support of his
allegation that the defendant was negligent in permitting the
blower to remain uncovered and unguarded.

(4)        " The question what precautions were reasonably necessary
to protect from an alleged danger from which the plaintiff's
injuries resulted, or whether the failure to adopt a particular
precaution constituted negligence under all the facts and cir-

cumstances shown, is, in general, for the jury. But it has been held to be error to submit to the jury the question whether the failure to take certain precautions was negligence, in the absence of any evidence that such precautions were usual under the circumstances, or that it would have been prudent to take them." Am. & Eng. Ency. L. 2d ed. vol. 21, pp. 501–2, citing *Hall* v. *Murdock*, 119 Mich. 389. In that case, which was an action for injuries sustained while riding on an elevator, the cable of which was alleged to have been defective, a verdict for the plaintiff was set aside and a new trial granted for errors, including an erroneous instruction to the jury directing them to consider the necessity of periodical tests of the strength of the cable, and permitting them to base a verdict upon their own opinion of the practicability and necessity of tests in the absence of evidence to show what, if any, kind of a test of strength was practicable or reasonable.

"The courts have long since abrogated the doctrine that a mere scintilla of evidence from which there might be a surmise of negligence is sufficient to carry a case to a jury, and have adopted the more reasonable rule that in all cases there is a preliminary question, which the judge must decide,—whether, granting to the testimony all the probative force to which it is entitled, a jury can properly and justifiably infer negligence from the facts proved; for, while negligence is usually an inference from facts, it must be proved, and competent and sufficient evidence is as much required to prove it as to prove any other fact." *Patton* v. *Southern Ry. Co.*, 82 Fed. Rep. 980.

(1)     It is established law that the mere happening of an accident is no proof of negligence. After the event prudent men will take precautions to prevent its recurrence. If the defendant in the case at bar was negligent, in the matter and manner complained of, such negligence existed prior to and was a proximate cause of the accident. Ought a careful inspection of the blower to convince one that it is a dangerous machine to use, for ventilating purposes, by the side of the passageway in a mill? Would a careful and prudent man anticipate, as being within the bounds of probability, the danger that a boy would slip, fall, and thrust his hand within it? If not, then the defendant

was not negligent.   There is no claim that the blower was out of repair, working badly, or defective.   It is claimed to be dangerous, uncovered, and unguarded.   It is not claimed that the plaintiff's hand was drawn in or sucked into the machine by its operation; on the contrary the tendency of the machine in action was to blow away objects attempting entrance through its mouth.   The case is not one where negligence can be presumed from a consideration of the cause of the accident, and the cause itself is in dispute—the question being whether the plaintiff fell and accidentally placed his hand in the blower, or whether he did so intentionally to investigate its mechanism; and this dispute arises out of the contradictory stories told by the plaintiff himself.

We are of the opinion that the verdict is against the evidence. The unsupported testimony of the plaintiff concerning the accident and its causes, unlikely in itself, and further weakened by contrast with the consistent story told by him, according to the testimony of two witnesses, in the presence of his cousin, whom he does not produce to deny it, immediately after he received his injury, is insufficient to establish the liability of the defendant.

Petition for a new trial granted, and case remitted to the Common Pleas Division for further proceedings.

*David S. Baker and Lewis A. Waterman,* for plaintiff.

*Vincent, Boss & Barnefield,* for defendant.