(96 South. 145)

## GADSDEN GENERAL HOSPITAL v. BISHOP. (7 Div. 228.)

(Supreme Court of Alabama. April 19, 1923.)

**1. Hospitals ⬤⟲8—In action for negligence in permitting patient to become infected with smallpox, evidence insufficient to prove that any other patient had smallpox.**

In an action against a hospital for death of plaintiff's intestate, alleged to have been caused by smallpox contracted from other patient, as the result of the negligence of the hospital employés, evidence *held* insufficient to prove that any of the other patients were afflicted with smallpox at the time of the intestate's presence in the hospital or that any of the hospital employés knew of the existence of any case of smallpox in the hospital at such time.

**2. Evidence ⬤⟲54 — Inference cannot be grounded upon inference.**

One fact cannot be inferred from another fact, which itself is but an inference.

**3. Hospitals ⬤⟲8—Doctor's testimony that patient developed smallpox after leaving hospital held not admissible to prove that she became infected at hospital.**

In an action against a hospital, for negligence of employés in permitting a patient to become infected with smallpox, in which it was claimed by the hospital that there was no other case of smallpox at the time of the patient's presence in the hospital, testimony of a physician that his patient developed smallpox after leaving the hospital should have been excluded, in the absence of a showing that the patient developed the disease within such a period after her presence in the hospital as to permit the inference that she became infected in the hospital.

Appeal from Circuit Court, Etowah County; O. A. Steele, Judge.

Action by Mattie Bishop, as administratrix of the estate of L. M. Bishop, deceased, against the Gadsden General Hospital, for damages for the wrongful death of her husband. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

The case was tried on count 2 of the complaint, which is as follows:

"Plaintiff, who sues as the administratrix of the estate of L. M. Bishop, deceased, claims of the defendant $20,000 as damages, and for cause of action says:

"During the month of March, 1920, and prior thereto, defendant owned and operated a hospital located in the city of Gadsden, Ala., wherein sick or disabled persons, needing care and nursing, were received and cared for by nurses and other employés and servants of the defendant during the time such persons remained in such hospital.

"Plaintiff avers that on or about the 1st day of March, 1920, her intestate L. N. Bishop was received by the defendant as a patient, for care and nursing in said hospital, for a reward. Plaintiff avers that her said intestate remained in said hospital under the care of its said nurses, servants, and agents for a period of about six days, and that during the time he was so confined therein one or more persons were also in said hospital afflicted with the disease of smallpox and being nursed and cared for by the nurses, servants, or agents of defendant as patients in said hospital, and during the time her said intestate was so confined therein he was exposed to said disease and infected therewith, by reason of the fact that such other person or persons suffering with said disease were confined and treated in said hospital during said time. And plaintiff avers that, as result of such infection, her said intestate within a few days after he left said hospital developed or broke out with said disease and suffered therefrom for a short period until he died therefrom. And plaintiff avers that the sickness and death of her said intestate was proximately caused by the negligence of the defendant's nurses, agents, or servants who had control or management of said hospital and were charged with the duty of nursing and caring for the patients therein, while acting within the line and scope of their employment by the defendant, in

this: That they were so negligent in the nursing and caring for the person or persons confined in said hospital as above stated, who were afflicted with the disease of smallpox and were known by them to be so afflicted, and in the nursing and care of her said intestate so that they negligently permitted her said intestate to be exposed to and infected with said disease while he was being treated therein, and as a result of such negligence he contracted smallpox and died therefrom as aforesaid, all to her damage as hereinabove stated."

The evidence shows that the defendant has a hospital which accommodates both pay and charity patients. It has no house surgeon, nor any medical experts of any kind, and does not undertake to diagnose the ailments of the patients it receives. It receives no patients except upon the application of a physician, with his accompanying diagnosis. The nurses and attendants employed by the hospital have nothing to do with the making of diagnoses, and in caring for patients are required to follow the directions of the physician in 'charge of each particular patient.

The intestate entered the hospital on March 1, 1920, underwent a surgical operation, and on March 6th left the hospital and returned to his home in Cherokee county. On March 14th or 15th, his local physician, Dr. McElrath, was called in and found him delirious with high fever, and four days later a rash appeared which Dr. McElrath diagnosed as smallpox. The patient died on April 1st. He went to the hospital under the care and supervision of his own physician, Dr. Savage.

Earnest Mayben entered the hospital as a patient on February 26th, and was discharged on March 7, 1920. Within 15 days after his entrance into the hospital—just after leaving—he developed a case of smallpox. L. K. Burton visited his wife at the hospital ten or twelve times. She was there for 14 days, including the time intestate was there. In about two weeks thereafter Burton developed smallpox, and about the same time, his young daughter, who had also been in the hospital during intestate's presence there, also developed the disease.

Dr. Guice testified that about that time he heard of several cases in the county, but saw none himself. Dr. Savage testified that he had heard of a good many people in Gadsden who had the smallpox, but could not connect them with the Bishop case.

As tending to show the presence in the hospital of a person who had smallpox during the intestate's stay there, plaintiff offered, and the trial court admitted over defendant's objection, the following:

Earnest Mayben testified that, while he was a patient in the hospital, on one occasion he saw a man in the hallway who had "bumps, and looking around it looked like his face was scaling off." The plaintiff, Mrs.

Bishop, testified that she visited her intestate twice on the same day at the hospital, that his room was on the left of the hallway, and that she saw a patient sitting in a room on the right of the hallway—the third room, she thought, from the front, and one or two rooms in front of the intestate's room—whose face "was kind of pinkish red, with sores, kind of dried up, scabby looking sores, which were kind of scattered, kind of like that all over his face." R. L. Bishop, the intestate's son, testified that he visited his father at the hospital on one occasion only; that in the second room from the front, on the right, he saw through the partly opened door a patient sitting so he could see a part of his face; and that "his face looked exactly, right along where I could see it, like red sores, kind of brown rather."

Dr. Guice, for the defendant, testified that he had charge of all of the patients in the rooms to the right of the hallway on the first floor of the hospital during the entire time of the intestate's presence there; that none of them had smallpox; that he had a patient named Weathers in the second room from the front, on the right side—the Burtons (above referred to) being in the next or third room on that side; that Weathers did not have smallpox, but was treated for influenza; that he was "one of these pimply looking fellows, looking like an acne on him. You can't say what is the cause, some have blackheads and acne, and syphilitic eruption. Weathers was of the pimply type."

Plaintiff was allowed, over defendant's objection, to ask Dr. Guice, as to one Zara Ashley, who, he testified, was in the hospital at some time—not stated—after the intestate was there; and who developed smallpox at some time—not stated—after she left the hospital.

Drs. McElrath, Guice, Savage, and Murphree, testified as to the period for development, the symptoms and facial appearance of smallpox patients, and the feasibility or difficulty of diagnosis.

Dr. Murphree, county health officer, testified that he "could not diagnose a case of smallpox by the eruptions on the face—not always"; that the difficulty of diagnosis depends on the case; that, "in order to exclude any eruption about the face or body that was similar to smallpox, the history of the eruption's course would have to be had;" that "a nurse may take a long course of training and never see a case of smallpox, and consequently would not be supposed to recognize one." Plaintiff was allowed, over defendant's objection, to ask the witness, "Could a trained nurse, engaged in treating cases of smallpox, administering medicines and possessing reasonable qualifications in that direction, detect a flagrant case of smallpox when she was treating or caring for a case"? He answered, "I think a nurse might recog-

nize a good many cases"—which defendant unsuccessfully moved to exclude.

Dr. Savage testified:

"I would not attempt to distinguish smallpox from other skin eruptions by glancing at a person walking along, or from the report of a layman seeing a person in a room as he walks down the hall, reporting that the person had an eruption on his face, and I don't see how anybody else could; I don't see how that could be done."

The medical testimony was that the period required for developing smallpox after exposure, may be as short as 6 or 7 days, and as long as 21 days, and that the average period was 12 or 14 days.

The trial judge instructed the jury as follows:

"The nurses and agents of the hospital had a right to rely upon the diagnosis made by the doctor until they discovered that the doctor had made a mistake. If such discovery should be made, and if, after it was discovered by them that the doctor had made a mistake, then it was their duty to exercise reasonable diligence to find out. Up to that time they might rely upon what the doctor said."

"Nurses in a hospital are not diagnosticians; it is not their duty, when a physician brings a patient to the hospital, to diagnose the case until they should find the doctor has made a mistake, and, if they should discover the doctor has made a mistake and the patient has an infectious disease, then it is their duty to exercise reasonable diligence, care, and prudence to prevent any other patient from becoming infected."

The jury found for the plaintiff, and judgment was rendered accordingly.

Defendant moved for a new trial on account of the several rulings of the court, and because the verdict was contrary to the evidence, which motion was overruled. Defendant appeals.

Stokely, Scrivner & Dominick, of Birmingham, and Dortch, Allen & Dortch, of Gadsden, for appellant.

Other instances or similar occurrences are not admissible in evidence, unless they occur under the same circumstances, conditions, and surroundings. Hertz v. Advertiser Co., 201 Ala. 416, 78 South. 794, L. R. A. 1918F, 137; Decatur Car Wheel Mfg. Co. v. Mehaffey, 128 Ala. 242, 29 South. 646; Ala. Lbr. Co. v. Keel, 125 Ala. 603, 28 South. 204, 82 Am. St. Rep. .265. Nonexpert witnesses cannot diagnose disease, or testify as to what disease a person is suffering with. 3 Chamberlayne on Evi. § 1996; McLean v. State, 16 Ala. 672; Dominick v. Randolph, 124 Ala. 557, 27 South. 481; B. & A. Ry. v. Campbell, 203 Ala. 298, 82 South. 546; Jones v. Sisters of Charity (Tex. Civ. App.) 173 S. W. 639; Adams v. Corona C. & I. Co., 183 Ala. 127, 62 South. 536. The burden was on plaintiff to show defendant was guilty of negligence,

and the mere possibility that defendant was guilty of negligence is not sufficient. Hamilton v. B. R., L. & P. Co., 198 Ala. 630, 73 South. 950; Laswon v. Mobile Elec. Co., 204 Ala. 318, 85 South. 257; Am. C. I. P. Co. v. Landrum, 183 Ala. 132, 62 South. 757; L. & N. R. Co. v. Binion, 98 Ala. 570, 14 South. 619; Looney v. Metropolitan R. Co., 200 U. S. 480, 26 Sup. Ct. 303, 50 L. Ed. 564; Koger v. Roden Coal Co., 197 Ala. 474, 73 South. 33; Mobile L. & R. Co. v. Roberts, 192 Ala. 486, 68 South. 815; Carlisle v. A. G. S., 183 Ala. 195, 62 South. 759; Stowers v. Dwight Co., 202 Ala. 252, 80 South. 90. Defendant's employees were under no duty to guard against risks which, by conjecture, might be conceived as barely possible, nor under any duty to suspect the doctors would make a mistake in diagnosis. Sou. Ry. v. Carter, 164 Ala. 103, 51 South. 148; Going v. Sou. Ry., 192 Ala. 665, 69 South. 73; Wheeler v. Standard Steel Co., 196 Ala. 634, 72 South. 254; Hillyer v. St. Bartholomew's Hospital, 9 British Rul. Cas. 1; Robinson v. Crotwell, 175 Ala. 194, 57 South. 23. One inference cannot be based upon another. So. Bell T. & T. Co. v. Miller, 192 Ala. 346, 68 South. 184; Manning v. John Hancock, etc., Co., 100 U. S. 693, 25 L. Ed. 761; Smith v. P. R. R. Co., 239 Fed. 103, 151 C. C. A. 277.

W. J. Boykin and Hood & Murphree, all of Gadsden, for appellee.

The jury were authorized to conclude that defendant knew there was a case of smallpox in the hospital and negligently permitted exposure to it. W. U. Tel. Co. v. Brazier, 10 Ala. App. 308, 65 South. 95; So. Ry. v. Gullatt, 158 Ala. 502, 48 South. 472.

SOMERVILLE, J. In order to recover under the complaint in this case, the essential facts therein alleged must be established: (1) That plaintiff's intestate died of smallpox; (2) that he contracted the disease while he was a patient in the defendant hospital; (3) that this resulted from infection communicated to him from another patient who was in the hospital during the intestate's presence there; (4) that defendant's nurses, agents, or servants who controlled or managed the hospital knew that such other patient was afflicted with smallpox; and (5) that they so negligently handled said patient that they negligently exposed the intestate to infection from him.

That the intestate died of smallpox is not disputed. Defendant's contention, however, is that the evidence is not sufficient to support either of the two essential findings of fact, (1) that there was, during the intestate's presence in the hospital, another patient in the hospital who was afflicted with smallpox, and (2) that the employés of the hospital, who had the care and control of such afflicted person, knew that he was thus afflicted.

[1] Conceding, for the argument, that the jury were justified in finding, as an inference of fact, that the intestate contracted smallpox while in the hospital from some source of infection to which he was therein exposed, we can find no rational basis for a finding that there was any case of smallpox in the hospital during the intestate's presence there.

The bumpy or scabby faced man, whose presence in a room or in the hallway, was noted by the three witnesses for plaintiff, was undoubtedly identical with Dr. Guice's patient, Weathers. To diagnose his case, from the mere description given of his bumpy, scabby, or scaly face, could not, under the evidence, be more than the sheerest conjecture. If expert physicians, accustomed to seeing and treating smallpox in all of its stages, are unable to make a reliable diagnosis of the disease from such an appearance, alone, without continued observation—and that is their testimony—we are at a loss to understand how a jury of laymen can do so, in view of its baffling resemblance to several other common diseases of the skin, such as chickenpox, acne, and syphilis.` The most that can be said is that such an appearance may possibly be the result of smallpox.

The testimony of Drs. Guice, Morgan, and Savage, if credible—and there is nothing to indicate that they are not entirely worthy of belief—clearly negatives the presence of any case of smallpox on the first floor of the hospital, and there is nothing that has the slightest tendency to show that it existed in any other part of the building.

[2] Nor do we think the conclusion can be supported that any of the employes of the hospital, including the nurses, knew of the existence of any case of smallpox in the hospital. If the existence of such a case had been established by direct evidence, instead of by conjectural inference merely, it may be that the jury could have reasonably inferred knowledge of its existence on the part of the employés, dependent, of course, upon the circumstances of its discovery and notoriety. But to ground a verdict first upon an inference that a case of smallpox existed, and then, cumulatively, upon the further inference that employés knew of its presence merely and solely because of its conjectural existence, is to violate a well-settled principle of law that an inference cannot be grounded upon an inference—that is, one fact cannot be inferred from another fact which itself is but an inference.

"Such a mode of arriving at a conclusion of fact is generally, if not universally, inadmissible. No inference of fact or of law is reliable drawn from premises which are uncertain. Whenever circumstantial evidence is relied upon to prove a fact, the circumstances must be proved, and not themselves presumed." United States v. Ross, 92 U. S. 281, 23 L. Ed. 707.

And, as observed in C. of G. Ry. Co. v. Teasley, 187 Ala. 610, 616, 65 South. 981, 983:

"When the existence of a fact is sought to be established by proving another fact, the fact so proven must be a fact from which the existence of the fact sought to be proven can be naturally * * * inferred or presumed. * * * A remote, speculative, and uncertain connection between the fact and the one sought to be inferred is insufficient."

There was no substantial evidence upon which to base a verdict for the plaintiff, and we hold that the motion for a new trial should have been granted, and was. erroneously denied.

[3] The testimony of Dr. Guice, that his patient Zara Ashley developed smallpox after leaving the hospital, should have been excluded as irrelevant, for the obvious reason that it was not made to appear that she developed the disease within such a period after her presence in the hospital as to permit the inference that she got the infection there. In overruling defendant's motion to exclude it, the trial court committed error which was prejudicial.

In our view of the case, it is unnecessary to determine whether, in the trial judge's oral charge to the jury, he improperly extended the duty of nurses in a hospital of this character, by the assumption that they might discover that the physician in charge of any patient had erroneously diagnosed the case as noninfectious; and by the requirement that, upon such supposed discovery, they should, in disregard of the physician's opinion, treat the case as infectious. We therefore pretermit consideration of that instruction.

For the errors noted, the judgment will be reversed, and the cause remanded for another trial.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN and THOMAS, JJ., concur.