162 So. 393

### REICHERT MILLING CO. v. GEORGE.

#### 6 Div. 572.

Supreme Court of Alabama.

June 28, 1934.

Rehearing Denied Oct. 4, 1934.

See, also, post, p. 589, 162 So. 402.

Fitts & Fitts and Harsh, Harsh & Hare, all of Birmingham, for the motion.

Murphy, Hanna, Woodall & Lindbergh, of Birmingham, opposed.

KNIGHT, Justice.

The petitioner feeling aggrieved at the conclusion of the Court of Appeals in holding that, under the facts in this case, as found by that court, the defendant, the Reichert Milling Company, was due the general affirmative charge in its behalf, has applied to this court, by proper petition, for a writ of certiorari to review and revise the opinion and judgment of the Court of Appeals.

The opinion of the Court of Appeals states:

"Appellee's testimony tended to prove the following facts:

" 'That her brother purchased for her a sack of flour manufactured, sacked, and put upon the market by appellant; that said flour, in said sack, was in the same condition when procured for appellee as it was when so put upon the market by appellant; that appellee's said brother took the sack of flour immediately upon its purchase to the home of appellee; that he took down the tin flour bin—a part of appellee's 'kitchen cabinet'—

from its place, thoroughly cleaned out said flour bin, including the sifter; that at the time this operation was performed there was no foreign substance of any kind in the bin; that said brother placed the bin back together and dumped the sack of flour into the bin; that he then fastened the top on the bin and the cap on the sifter; that the top was never removed from the bin, and that the cap was removed from the sifter only when appellee was sifting flour through the sifter at the bottom of the bin; that on the morning of the day after the purchase of the flour—approximately twenty-four hours after it was dumped into said bin—the partially dried out body of a rat or mouse was discovered in the flour; that appellee's brother who bought, emptied up, etc., the said flour observed same when it was so emptied up—to so denominate dumping it into the flour bin—and that he saw no rat or other foreign substance in said flour at that time."

With further reference to facts appearing in the evidence in the case, the opinion of the Court of Appeals proceeds:

"While the above statement, taken with enough literalness, we think, to justify the quotation marks, from the excellent brief filed here on behalf of appellee, is, we believe, fully borne out by the bill of exceptions, still we feel that it should be observed that a part of the testimony supporting same consisted of the bald statement—allowed without objection—of her witnesses that the 'flour bin' was not opened, etc., during the approximately twenty-four hours, above mentioned, when the testimony conclusively showed that the cabinet, containing the bin, etc., stood in the kitchen of the home of appellee, where she and three others lived, etc., and spent the night that elapsed, etc., if not in bed asleep, at least not in the kitchen, etc., guarding, or in view of said cabinet, bin, etc. Such testimony, as to facts about which the witness obviously, and physically, could not know, has been denominated somewhere in the books a 'testimonial non-entity,' etc. But we will not bother about that phase of it here; we will treat the case as though this part of appellee's claim had been properly adduced in the testimony.

"The pertinency of the remarks contained in the preceding paragraph is, we think, sufficiently shown by the further observation that at least one of the occupants of appellee's home, who ate dinner, supper, and breakfast there, after the morning upon which the flour was dumped into the bin, and before the alleged 'rat' was discovered in the flour, etc., and who spent the night there, was not examined as a witness upon the trial. What he did to the bin, etc., is left a matter of conjecture."

Upon the foregoing testimony, the Court of Appeals, in the opinion before us, concluded the defendant was entitled to the general affirmative charge, which it duly requested in writing.

We may here state that the action is in tort against the appellant—defendant in the court below. The complaint charges that the defendant was engaged in the business of manufacturing, preparing, or packing a certain brand of flour, and which, after being prepared and packed in sacks or bags, was sold through local stores at retail for the purpose of human consumption.

The complaint avers that the defendant negligently caused, permitted, or allowed said flour contained in the sack sold to the plaintiff to be unsuitable and unfit for human consumption, by reason of it having therein the body, or parts of the body of a decomposed rat or mouse, which caused said flour to be nauseating, sickening, and dangerous to any person who consumed the said flour as a food. The complaint then proceeds to aver that the plaintiff made bread from said flour and consumed a portion of it, and as a result she was made sick and nervous, and was caused to suffer great bodily and mental pain and anguish. Then follows a catalogue of her injuries and suffering.

The facts, as found by the Court of Appeals, support a fair and reasonable inference, to say the least of it, that the flour manufactured and sacked by the defendant, and sold to the plaintiff at a retail store, contained in the flour so sacked and sold, at the time it was placed on the market by the defendant, the body of a "rat or mouse." While there was in the case no direct evidence of the above facts, yet the circumstances detailed in evidence were such as to afford a reasonable inference that such was the case.

 The general charge should never be given when the evidence is such as to reasonably support an inference adverse to the party requesting such charge. Alaga Coach Line, Inc., v. Foy, 227 Ala. 506, 150 So. 493; Alaga Coach Line, Inc., v. McCarroll, 227 Ala. 686, 151 So. 834; Byram v. Livingston, 225 Ala. 442, 143 So. 461; McMillan v. Aiken, 205 Ala. 35, 88 So. 135;

Southern B. & L. Ass'n v. Bryant, 225 Ala. 527, 144 So. 367.

In the case of Rochester-Hall Drug Co. v. Bowden, 218 Ala. 242, 118 So. 674, it was observed:

"While the rule has frequently been referred to by this court that, upon certiorari to the Court of Appeals to review its rulings, it will not review the facts 'for the purpose of revising the application of same to the law by said Court of Appeals' (Postal Telegraph-Cable Co. v. Minderhout, 195 Ala. 420, 71 So. 91; Ex parte Steverson, 177 Ala. 384, 58 So. 992; Ex parte Savannah Williams, 182 Ala. 34, 62 So. 63), this court, however, will review the rulings of said court, to ascertain if it has correctly determined legal conclusions from facts found by it to exist in the record, or has misapplied the law to such facts (Lancaster v. State, 214 Ala. 2, 106 So. 617)."

The rule of review declared in the Rochester-Hall Drug Co. Case, supra, was reaffirmed in the cases of Craft v. Standard Accident Ins. Co., 220 Ala. 6, 123 So. 271; Fairbanks, Morse & Co. v. Dees et al., 220 Ala. 41, 126 So. 624; Home Ins. Co. v. Pettit, 225 Ala. 487, 143 So. 839.

The above being the established rule of this court in reviewing the opinions and judgments of the Court of Appeals, it follows that we are required in this case to determine whether or not that court has misapplied the law to the facts as found by it, or has reached an incorrect legal conclusion from the facts found by it to exist in the record.

We have said that the facts as found to exist by the Court of Appeals afford a reasonable inference that the body of the rat was in the sack of flour when the defendant, manufacturer, placed it with the retailer for sale to the consumer, and was bought by the plaintiff, then what presumption is indulged by the law as to negligence on the part of the manufacturer, there being no evidence, so far as we are advised, to show that the defendant was not guilty of any actual negligence in the manufacture, preparation, and sacking of the flour.

In 45 Corpus Juris, § 768, page 1193, the rule of res ipsa loquitur is thus broadly stated by the author: "Where the thing which caused the injury complained of is shown to be under the management of de-

fendant or his servants and the accident is such as in the ordinary course of things does not happen if those who have its management or control use proper care, it affords reasonable evidence, in the absence of explanation by defendant, that the accident arose from want of care. This statement of the rule of res ipsa loquitur, based on the expression in an early English case, which has been widely quoted with approval, has been in substance most frequently adopted and applied in subsequent decisions, so that the occurrence of an injury under the circumstances therein set forth raises a *presumption or permits an inference* that the party charged was guilty of negligence." (Italics supplied.)

At section 59 of 1 Shear. and Red. on Neg. (5th Ed.) it is said: "In many cases the maxim 'res ipsa loquitur' applies. The affair speaks for itself. The accident, the injury and the circumstances under which they occurred are in some cases sufficient to raise a *presumption of negligence,* and thus cast upon the defendant the burden of establishing his freedom from fault. Proof of an injury occurring as the proximate result of an act of the defendant, which would not usually, if done with due care, have injured any one, is enough to make out a presumption of negligence. When a thing which causes injury is shown to be under the management of the defendant, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it *affords reasonable evidence,* in the absence of explanation by the defendant, that the accident arose from a want of care. So also: 'Where it is shown that the accident is such that its real cause may be the negligence of the defendant, and that, whether it is so or not, is within the knowledge of the defendant, the plaintiff may give the required evidence of negligence, without himself explaining the real cause of the accident, by proving the *circumstances,* and thus raising a *presumption* that, if the defendant does not choose to give the explanation, the real cause was negligence on the part of the defendant.'" (Italics supplied.) The rule above stated was cited by this court with approval in the case of Bloom v. City of Cullman, 197 Ala. 490, 73 So. 85.

In 45 Corpus Juris 773, page 1205, the reason for the doctrine of res ipsa loquitur

is "based in part upon the consideration that, as the management and control of the agency which produced the injury is, under the circumstances to which the doctrine applies, exclusively vested in defendant, plaintiff is not in a position to show the particular circumstances which caused the offending instrumentality to operate to his injury, while defendant, being more favorably situated, possesses the superior knowledge or means of information as to the cause of the accident, and should, therefore, be required to produce the evidence in explanation."

This statement of the reason or theory of the doctrine of res ipsa loquitur seems to find direct support and approval in our own case of Lawson v. Mobile Electric Co., 204 Ala. 318, 85 So. 257.

The Supreme Court of New Jersey in Bower v. Bower, 78 N. J. Law, 387, 74 A. 522, 525, in an opinion by Justice Garrison, points out the basic or fundamental distinction between "presumption" and "inference," with reference to the doctrine of res ipsa loquitur in which he observed:

"It is proper therefore to point out that the fundamental distinction between a 'presumption' and an 'inference' does not arise from any consideration as to the greater persuasive quality of the former, but solely from a rule of law by force of which, in the case of a presumption, a given evidential fact is invested with certain consequences touching the further production of proof. For the term 'presumption' denotes that a force is accorded by law to a given evidential fact, whereby the duty of producing further testimony is affected. A presumption therefore is an inference to which definite legal consequences are attached. An inference, however persuasive, that does not affect the duty of producing testimony, is not a presumption."

This distinction between a "presumption" and "an inference" was cited with approval by this court in the case of Mathews v. Alabama Great So. Ry. Co., 200 Ala. 251, 76 So. 17.

In the Mathews Case, supra, it is expressly held that, in this jurisdiction, the rule expressed in the maxim res ipsa loquitur takes effect and operates, in a proper case, in consequence of "presumption," and not "inference." And it was on this theory or reason that it was held in the Mathews Case that a *servant suing* the master for an injury received in the *master's service* cannot be aided by a presumption that negligence characterized the cause of the injury; and so, because there is no presumption of negligence in such cases. The Mathews Case is, therefore, for the reason above stated, differentiated from the instant case, in which the maxim of res ipsa loquitur applies in full force.

Bouvier defines the maxim of res ipsa loquitur as a "phrase often used in actions for injury by negligence where no proof of negligence is required beyond the accident itself, which is such as necessarily to involve negligence." And this court has time and again given its approval to this definition by Bouvier. The maxim connotes a *"presumption" of negligence* from a given injury which falls within the principle of the rule, and not *an inference,* as supposed by the Court of Appeals.

The presumption here referred to is an administrative presumption, casting upon the defendant the duty of producing evidence to overcome this presumption so indulged for administrative purposes. Cruse-Crawford Mfg. Co. v. Rucker, 220 Ala. 101, 123 So. 897.

This court, in the cases of Coca-Cola Bottling Co. v. Crook, 222 Ala. 369, 132 So. 898, and Try-Me Beverage Co. v. Harris, 217 Ala. 302, 116 So. 147, 148, has held that "the presence of foreign matter deleterious to health sealed up in a bottle of soft drink is evidence of negligence."

There can be no substantial difference in fact between being "sealed up in a bottle" and being sewed up in a bag.

The facts as found by the Court of Appeals do not simply afford an inference of the presence of the partially decomposed rat in the flour at the time the defendant prepared and sacked the flour, but they are persuasive that this foreign body was in fact in the sack of flour at the time the flour left the possession of the defendant. It is not a case where one inference is attempted to be predicated upon another inference, as supposed by the Court of Appeals. It is essentially a case where an injury has occurred under such circumstances that the law raises a *presumption of negligence,* which will supply proof of actual negligence until this presumption is overcome by proof on the part of the party to whom the presumption of negligence is thus imputed. So far as the opinion of the Court of Appeals discloses to the contrary, there was no such exculpatory evidence.

In this state of the evidence as found by the Court of Appeals, the defendant was not due the affirmative charge in its behalf, and in so holding the Court of Appeals committed error, and for which its judgment must be reversed.

It, therefore, follows that the writ prayed for will be granted, and the judgment of the Court of Appeals will be, and is, reversed, and the cause remanded to that court for further proceedings in accordance with this opinion.

Writ granted.

GARDNER, THOMAS, BOULDIN, and FOSTER, JJ., concur.

BROWN, Justice (dissenting).

The burden of the petitioner's complaint is that the opinion of the Court of Appeals denies her the right to make out a case by circumstantial evidence. The answer to this contention is, that the Court of Appeals has correctly stated a rule of law, universally recognized, applicable to cases depending on circumstantial evidence, that the facts relied on as the basis for a legitimate inference—"the terminus a quo, so to speak"—must be established by direct evidence. Chamberlayne Modern Evidence, vol. 2, § 1029; Chamberlayne Handbook on Evidence, § 415; 10 R. C. L. 870, § 13; Gadsden General Hospital v. Bishop, 209 Ala. 272, 96 So. 145; United States v. Ross, 92 U. S. 281, 23 L. Ed. 707; Atchison, T. & S. F. Ry. Co. v. Baumgartner, 74 Kan. 148, 85 P. 822, 10 Ann. Cas. 1094, and note, page 1096, where the cases are collected; Atlantic Coast Line R. Co. v. R. L. Cooper Lumber Co., 219 Ala. 484, 122 So. 661.

These authorities clearly establish the principle that an inference cannot be made the predicate for another inference. The court in Diel v. Missouri Pacific Railway Co., 37 Mo. App. 454, concisely states the basis and reason of the rule: " * * * To hold that the fact thus inferred or presumed at once becomes an established fact, for the purpose of serving as a base for a further inference or presumption, would be to spin out the chain of presumptions into the regions of the barest conjecture."

The petitioner recognizes that her case must stand or fall on circumstantial evidence, and the principle which we have stated cannot be ignored; it is supported by logic, reason, and unimpeachable authority.

The principle is clearly illustrated and applied in the case of Gadsden General Hospital v. Bishop, 209 Ala. 272, 96 So. 145, 148. The contention of the plaintiff in that case was that her intestate died of smallpox communicated to him from another case of smallpox in defendant's hospital while intestate was being treated as a patient in defendant's hospital; that the disease was communicated to said intestate in consequence of the negligence of the servants of the defendant, who had knowledge of the existence of the other case. The fact that intestate died of smallpox was shown without dispute, but whether or not there was another patient in the hospital at the time was left wholly to a matter of inference, and the trial court submitted the case to the jury, allowing them to draw the inference that there was such other case, and on this inference to predicate another inference that the employees of the hospital had knowledge thereof and negligently allowed the disease to be communicated to the plaintiff's intestate. There the court observed:

"If the existence of such a case had been established by direct evidence, instead of by conjectural inference merely, it may be that the jury could have reasonably inferred knowledge of its existence on the part of the employees, dependent, of course, upon the circumstances of its discovery and notoriety. But to ground a verdict first upon an inference that a case of smallpox existed, and then, cumulatively, upon the further inference that employees knew of its presence merely and solely because of its conjectural existence, is to violate a well-settled principle of law that an inference cannot be grounded upon an inference—that is, one fact cannot be inferred from another fact which itself is but an inference.

" 'Such a mode of arriving at a conclusion of fact is generally, if not universally, inadmissible. No inference of fact or of law is reliable drawn from premises which are uncertain. *Whenever circumstantial evidence is relied upon to prove a fact, the circumstances must be proved, and not themselves presumed.*' United States v. Ross, 92 U. S. 281, 23 L. Ed. 707." Central of Georgia Ry. Co. v. Teasley, 187 Ala. 610, 65 So. 981, 983. (Italics supplied.)

In the application of this rule of circumstantial evidence the case at bar cannot be differentiated from the decision in the Gadsden General Hospital Case. Here,

the manufactured product, the flour, was not prepared for immediate consumption without further preparation, and mixing with other ingredients, and such mixing, kneading into dough, and baking afforded opportunity for examination and inspection. The alleged deleterious matter was not found in the sealed package, but was found in the flour after it had been in the flour bin or compartment of the kitchen cabinet, and was, twenty-four hours after, readily discovered on inspection of the bin.

In Birmingham Chero-Cola Bottling Co. v. Clark, 205 Ala. 678, 89 So. 64, 17 A. L. R. 667, the doctrine of implied warranty for the benefit of the ultimate consumer was repudiated, and the principle that the manufacturer was liable to the ultimate consumer in tort for negligence only was recognized and adopted. In the course of the opinion the court quoted with approval so much of the text in 24 R. C. L. page 514, § 806, as is herein italicized, and in Macrum v. Security Trust & Savings Co., 221 Ala. 419, 422, 129 So. 74, that part of the text not italicized was approved. We quote the text:

"The liability of one who sells an article imminently dangerous, to a person not in privity of contract with him, is founded in tort and not in contract. * * * The foundation of liability here, as elsewhere, is the superior *knowledge* of the manufacturer or seller as to the peril embodied in the article sold. And when it is said that a manufacturer or seller of an article is not liable to a remote transferee thereof, the implication is that he had no superior knowledge and owed no duty of information to such transferee. *It has been observed that the real ground of liability of the seller to an ultimate consumer is, more properly speaking, a duty one owes to the public not to put out articles to be sold upon the markets for use injurious to their nature, of which the general public have not means of inspection to protect themselves.*" (Italics supplied.)

Where the article manufactured and put on the market is inherently dangerous, such as poisons or dangerous drugs, the law requires that the manufacturer exercise a high degree of care in putting them up, and that the package carry with it notice of its dangerous character, but when the article itself is not inherently dangerous to health or life, a third party seeking to hold the maker liable for injuries suffered by him in the use of the article must bring to the maker or manufacturer knowledge of notice, express or implied, that it was infected with matter deleterious to health, and this is especially so when the manufactured article is not intended for immediate consumption without further preparation. 24 R. C. L., page 515, § 807; Liggett & Myers Tobacco Co. v. Cannon, 132 Tenn. 419, 178 S. W. 1009, L. R. A. 1916A, 940, Ann. Cas. 1917A, 179; note 41 A. L. R. 49; Hasbrouck v. Armour & Co., 139 Wis. 357, 121 N. W. 157, 23 L. R. A. (N. S.) 876.

Therefore, it is essential to the defendant's liability that the jury infer from the facts stated in the opinion of the Court of Appeals that the dried out carcass of the rat or mouse was in the sack of flour, and cumulatively to infer from that fact, which rested wholly in inference, that the defendant knew, or should have known, that it was in said sack when it put the sack of flour on the market, and further infer that when it was sealed in the sack it was of such deleterious character that it infected the manufactured article—the flour—to such extent that its poisonous effect was carried into the bread made by the plaintiff from the flour and other necessary ingredients. A verdict predicated on such uncertain elements is not a verdict, but is but a mere guess founded on the barest of conjectures.

In Try-Me Beverage Co. et al. v. Harris, 217 Ala. 302, 116 So. 147, 148, Coca-Cola Bottling Co. v. Crook, 222 Ala. 369, 132 So. 898, and Collins Baking Co. v. Savage, 227 Ala. 408, 150 So. 336, the deleterious substance was shown by direct testimony to be sealed in the manufactured article prepared for immediate human consumption, not requiring any further preparation, mixing, or affording an opportunity for inspection by the user.

In the Harris Case, supra, the court observed:

"This is not a case of mere conjecture or speculation calling for the affirmative charge or a new trial. The presence of foreign matter deleterious to health *sealed up in a bottle of soft drink* is evidence of negligence." (Italics supplied.)

The Crook Case, supra, followed the Harris Case, reproducing the above excerpt, of which the court further observed, "the issue of negligence vel non was for the jury on the whole evidence." That was merely to say that the evidence afforded an inference of negligence, which the jury

might or might not draw. Minutilla v. Providence Ice Cream Co., 50 R. I. 43, 144 A. 884, 885, 63 A. L. R. 334.

And whether this inference of negligence be characterized as an inference of fact or an inference or presumption of law, is wholly immaterial, for, as was observed in United States v. Ross, supra, approved in Gadsden General Hospital v. Bishop, supra, "No inference of fact or of law is reliable drawn from premises which are uncertain."

In the case of Collins Baking Co. v. Savage, supra, the tack or nail was concealed in a baked loaf of bread prepared and intended for immediate human consumption, and was swallowed by the plaintiff in eating the bread. The defendant sought to meet the prima facie case made by the proof of these facts by direct positive testimony showing that it, the bakery, sifted the flour that went into the loaf of bread. Answering the contention that this proof met the plaintiff's prima facie case, the court observed:

"The jury could have well *inferred* that the bread in question was in the same condition when the plaintiff bought it from the retailer that it was when delivered by the defendant to the retailer. That is, that wire or tacks got into it in the manufacture of same, and this, in addition to *the fact* that said foreign substance was in the bread when plaintiff ate same and was thereby injured, made out a prima facie case, and it was incumbent upon the defendant to acquit itself of negligence. * * * This the defendant attempted to do by showing a sifting of the flour, *but made no effort* to show a close and careful examination of the other ingredients that went into the dough, that is, lard, sugar, and salt, and the jury could reasonably infer the want of care and prudence in this respect." (Italics supplied.) Collins Baking Co. v. Savage, 227 Ala. 408, 409, 150 So. 336, 337.

This reasoning is applicable here. There is nothing in the statement of facts in the opinion of the Court of Appeals going to show that the plaintiff inspected the other ingredients that went into the bread which she manufactured from the flour, and the jury could have as well inferred from this want of proof, that the deleterious matter she complains of got into the bread through her own negligence, and the dried mouse had nothing to do with her sickness or discomfort—if she was made sick or suffered discomfort—for this does not appear from the statement of facts by the Court of Appeals.

The holdings of the court in Coca-Cola Bottling Co. v. Crook, 222 Ala. 369, 132 So. 898, and Try-Me Beverage Co. v. Harris, 217 Ala. 302, 116 So. 147, as I read them, were not rested upon the doctrine, res ipsa loquitur, and this doctrine, as stated in the majority opinion, taken from Corpus Juris, shows that it cannot be applied to the facts of this case, and if applied, it does not cure the defects in the plaintiff's case.

"Where *the thing which caused the injury complained of is shown to be under the management of defendant or his servants* and the accident is such as in the ordinary course of things does not happen if those who have its management or control use proper care, it affords reasonable evidence, in the absence of explanation by defendant, that the accident arose from want of care * * * so that the occurrence of an injury under the circumstances therein set forth raises a *presumption* or *permits an inference* that the party charged was guilty of negligence." (Italics supplied.) 45 C. J., § 768, page 1193.

The "thing causing the injury" under this doctrine must be *shown to be in the control or management of the defendant or his servants at the time of the injury.*

What caused the injury? Resolving all doubts in favor of the plaintiff's case, the dried rat in the flour. Was it ever in the control of the defendant? It certainly is not shown, but at best must be inferred, and to complete the chain it must also be inferred that the injury proximately resulted from the negligence of the defendant.

The facts found by the Court of Appeals fall short of showing that the "thing causing the injury" was in defendant's management or control at the time of the injury. In fact do not even authorize an inference that it was in defendant's control or management at such time, if ever. Moreover, said facts fall short of showing any injury to the plaintiff, and to supply this defect the majority opinion resorts to the averments of the complaint to establish the injury.

In dealing with the sufficiency of the evidence to warrant a submission of the issue to the jury, in such cases, on the question of negligence, the authorities differentiate cases involving deleterious matter put up in individual, sealed, or wrapped articles, intended for immediate consumption by the

customer, from cases involving articles of food that require further mixing and preparation. In the first-mentioned class of cases, much importance is attached to the fact that the bottle, carton, or wrapping is shown not to have been disturbed or tampered with. Here, it is not out of place to note that the finding of the Court of Appeals is, "that said flour, in said sack (not the sack itself), was in the same condition when procured for appellee as it was when so put upon the market by appellant."

In the case of Minutilla v. Providence Ice Cream Co., supra, the Supreme Court of Rhode Island, in a well considered opinion, held that the res ipsa loquitur doctrine was not applicable. In that case, "plaintiff, a customer in a restaurant, purchased and ate therein a portion of ice cream manufactured and put up by defendant in small parcels, each wrapped in tissue paper. The cream was kept in a cooler furnished by defendant, the pieces being taken out singly and served in the wrappers. Imbedded in the middle of plaintiff's parcel were four very small particles of glass which scratched plaintiff's throat and two of which a physician removed from his stomach by means of a stomach pump. The fragments of glass were so small that they probably would have been swallowed unnoticed except for the scraping of plaintiff's throat and a subsequent crushing of a spoonful of cream to ascertain what the hard substance might be. Return to the counterman and examination by him disclosed another bit of glass in the 'middle' of the portion which had been served to plaintiff. Plaintiff who incurred some medical expenses and suffered for a time with stomach trouble brought suit in 'trespass on the case for negligence,' and recovered a verdict" and judgment.

A new trial was denied, and the court, dealing with the sufficiency of the evidence to carry the case to the jury, observed:

"Was the evidence sufficient to warrant submission to the jury and to sustain the finding for plaintiff? Perhaps in no state have so many and recent cases been brought for putting out dangerous foodstuffs as in Massachusetts. One of the latest is O'Brien v. Louis K. Liggett Co., 255 Mass. 553, 152 N. E. 57, 47 A. L. R. 146 (glass), wherein the court held that the mere presence of glass in strawberry shortcake served by defendant was not evidence to warrant an inference that *defendant* was negligent. The case followed Ash v. Childs Dining Hall Co., 231 Mass. 88, 120 N. E. 396, 4 A. L. R. 1556, which is adversely criticized in 5 Wigmore on Evidence (2d Ed.) p. 496, as casting an improper burden on plaintiff. The doctrine of res ipsa loquitur in some states has been applied only in cases of canned goods or those in sealed packages. Richenbacher v. California Packing Corp. [250 Mass. 198, 145 N. E. 281], supra. Without discussing the limitations of the res ipsa loquitur doctrine, we may note that the court in this case expressly stated it to be inapplicable, and plaintiff assented thereto. Defendant, however, urges that the court substantially permitted the jury to find its verdict by application of the doctrine of res ipsa loquitur in spite of plaintiff's disclaimer of reliance thereon and of the explicit statement of the court. The transcript shows that in the extended discussion of the law between the court and counsel for the defendant the court said that defendant's negligence could not be assumed; it must be established by a preponderance of evidence. The position of the court is fairly shown by defendant's brief in this court, where his counsel complains (page 23): 'The court charged that in view of the practical impossibility for one who buys a food product to know the conditions under which that particular loaf of bread or piece of ice cream was manufactured, the law, in view of that difficulty, if a person is injured by a food product and he can show, by proper probative evidence, that he bought that food product in the original package in which it was put up by the maker and that in that original package was a substance which was harmful or injurious to the human body and he shows that to the satisfaction of the jury, then a presumption arises that the manufacturer of that food product was negligent in its manufacture.' This statement of the law was not an application of the res ipsa loquitur doctrine. Davis v. Van Camp Packing Co. [189 Iowa, 775, 17 A. L. R. 649, 176 N. W. 382], supra. The court ruled that testimony that bits of glass were imbedded in the frozen cream, together with evidence that it was served in the original package, furnished the basis for a reasonable inference of negligence on the part of the manufacturer. The court used presumption in reference to the procedural matter of requiring defendant to go forward with evidence. It did not use it in the strict meaning of the term. A presumption strictly is not evidence. It is an excuse for not producing evidence. A presumption, if met by satisfactory evidence, vanishes, and leaves

nothing for the jury to pass upon. Colangelo v. Colangelo, 46 R. I. 138, 125 A. 285; Callahan v. Weybosset Pure Food Market, 47 R. I. 361, 133 A. 442; Van Ausdall v. Van Ausdall, 48 R. I. 106, 135 A. 850. Here the finding of the glass in the middle of the cream, and the tracing of the wrapped-up parcel uninterfered with until served to plaintiff from the container provided by defendant and unwrapped by plaintiff, would justify a reasonable human being in drawing the logical inference that the glass got into the cream as a result of the maker's carelessness in mixing. Cf. Flaccomio v. Eysink, 129 Md. 367, 100 A. 510. This inference was more than a presumption or a substitute for evidence as a matter of procedure. It was a logical deduction from the circumstances shown to exist between the making of the cream and the finding of the glass. Freeman v. Schultz Bread Co. [100 Misc. 528, 163 N. Y. S. 397], supra. 'Negligence is usually an inference from facts.' Venbuvr v. Lafayette Worsted Mills, 27 R. I. 89, 60 A. 770.

"When defendant then offered in evidence facts showing that the utmost care in straining and preparing ingredients for the cream was exercised by defendant at about the time this particular piece of cream was made, although the manufacture of the particular piece of cream causing the injury could not be traced by defendant, the basis was furnished for a logical inference that defendant was not negligent. If the care commonly used by defendant had been exercised, the presence of these pieces of glass in the cream sold to the plaintiff would have been impossible. Yet the fact remains that there were no circumstances to warrant an inference of negligence on the part of any one other than defendant. Davis v. Van Camp Packing Co., supra. Only when no inference of defendant's negligence fairly may be drawn from the facts can a verdict be directed in his favor. Hardie v. Charles P. Boland Co., 205 N. Y. 336, 98 N. E. 661; Hasbrouck v. Armour & Co., 139 Wis. 357, 121 N. W. 157, 23 L. R. A. (N. S.) 876 [21 Am. Neg. Rep. 430]; O'Brien v. Louis K. Liggett Co., supra. In the case at bar plaintiff's testimony sufficiently excluded other possible causes of the presence of the glass to warrant an inference that defendant, in spite of its usual care, was negligent. On the other hand, defendant's testimony furnished a basis for an inference of defendant's due care. The jury had to determine which of the two inferences to draw and to consider the evidence in the light of the court's charge that plaintiff must establish defendant's negligence by a preponderance of the evidence. That there was no evidence to show how the glass got there and that defendant's evidence was that no electric light bulbs or other glass had been broken near the place of manufacture, either at or about the time the cream was made or at any other time, were facts to be considered. The real determination had to be whether the evidence of customary care as an inference of care in this case was outweighed by the inference of defendant's negligence arising from the presence of glass in the original package. Questions of inference frequently arise in the determination of disputed questions of negligence. In Tonsman v. Greenglass, 248 Mass. 275, 142 N. E. 756 [23 N. C. C. A. 864], where metal was found in a loaf of bread, the court told the jury that res ipsa loquitur did not apply; that it must draw only reasonable inferences, and could not guess that defendant was liable. The court said the question for the jury was 'whether the facts as disclosed to you by this evidence * * * afford * * * just ground for a reasonable inference that, according to ordinary experience, this piece of metal, if it was in the bread, would not have gotten in there except for the want of due care of this defendant, or someone for whose conduct he was responsible, in the preparation of the bread.'" Minutilla v. Providence Ice Cream Company, 50 R. I. 43, 144 A. 884, 886, 63 A. L. R. pages 334, 336–339.

See, also, Ash v. Childs Dining Hall Co., 231 Mass. 86, 120 N. E. 396, 4 A. L. R. 1556, and Jacobs v. Childs Co. (Mun. Ct. N. Y.) 166 N. Y. S. 798, holding that the res ipsa loquitur doctrine is not applicable.

If the evidence had shown as a fact that the dried out carcass of the rat was sealed or sewed up in the sack of flour, this, under the cases, would warrant an inference of negligence, but if the rat got in the sack of its own volition and died, this would not justify an inference that the manufacturer was negligent. A rat or mouse is one thing, and a piece of iron or glass is another.

The opinion of the Court of Appeals correctly states the law, and, in my judgment in the absence of a full statement of the facts showing injury, the writ should be denied on the authority of Postal Telegraph-Cable Co. v. Minderhout, 195 Ala. 420, 71

So. 91, and Birmingham Southern R. Co. v. Goodwyn, 202 Ala. 599, 81 So. 339.

I therefore respectfully dissent.

ANDERSON, C. J., concurs in the foregoing dissent.