# Bloom v. City of Cullman.

## Injury From Electricity.

(Decided November 16, 1916.   73 South. 85.)

1. **Municipal Corporations; Public Ways; Electric Street Lights; Statutes.**—A municipality is not liable for death from defective insulated electric street lights operated by it, as being a defect within the provisions of § 1273, Code 1907, since such provisions relate only to defects or conditions created by third persons not in the employment of the city.

2. **Negligence; Res Ipsa Loquitur.**—Contractual relationship between the parties is not essential to the application of the rule of res ipsa loquitur.

3. **Electricity; Street Lights; Res Ipsa Loquitur.**—Where a pedestrian in a public street is electrocuted by coming in contact with an electric current passing from feed wire to street light, communicated to a chain used to raise and lower the light, because of some defect in the mechanism owned and controlled by the city, the rule of res ipsa loquitur applies.

4. **Same; Degree of Care.**—The degree of care required of a municipality operating electric street lights, as a means of transmitting its electric current over public thoroughfares, is high and exacting, commensurate with the very dangerous agency employed.

5. **Same; Contributory Negligence; Jury Question.**—Under the evidence in this case it was a question for the jury whether the pedestrian electrocuted was guilty of negligence, barring recovery by his personal representative.

6. **Same; Burden of Proof.**—In an action for death of plaintiff's intestate caused by an electric shock from a street light operated by a municipality, the burden of proving intestate's contributory negligence rested upon the city.

7. **Same.**—If the pedestrian was warned, or had reason to know that a chain used to lower a municipal electric light, was charged with electricity from feed wires, and carelessly touched the chain, he was guilty of negligence barring recovery by his personal representative.

8. **Same.**—If a pedestrian undertook to improve the light by shaking the chain, not knowing the chain was charged with electricity, and having no knowledge that would deter a reasonably prudent man from touching it; or if he had recently done so, or had seen others do so in safety, the touching of the chain was not negligence barring recovery for his death.

9. **Same.**—Whether the pedestrian's act in touching the chain was negligence, depended on whether, under all the circumstances it was the act of a reasonably prudent man.

APPEAL from Cullman Circuit Court.

Heard before Hon. R. C. BRICKELL.

Action by Mrs. Agnes Bloom, as administratrix, against the city of Cullman for damages for the death of her intestate caused by an electric current operated by the city. Judgment for defendant and plaintiff appeals. Reversed and remanded.

The counts describe the condition of the arc light as described in the opinion; count 1 alleging that said chain by and through the negligence of defendant became charged with a heavy current of electricity, and that plaintiff's intestate, who was upon said public street, and had a right to be, came in contact with said chain, and as a consequence thereof his death was caused by means of said electricity, with which said chain was charged as aforesaid, and plaintiff avers that said intestate's death was the proximate consequence of said negligence of defendant. The second count charges that defendant so negligently conducted itself in and about the custody, control, or management of same that said chain came in contact with the wire in the custody of, controlled or maintained by, said city, which wire was charged with the deadly current of electricity, and which current communicated to said chain, and that while said chain was upon a public street in said city, so charged with electricity, where plaintiff's intestate was, and where he had a right to be, he came in contact therewith, and his death was caused by means of said electricity with which said chain was charged as aforesaid, and plaintiff avers that her said intestate's death was proximately caused by the negligence of defendant. The fourth count is a wanton count, and charges that defendant's servants or agents, acting within the line and scope of their authority as such, wantonly or intentionally caused plaintiff's said intestate's death by wantonly or intentionally causing or allowing said chain to be and remain heavily charged with electricity from or by said wire so maintained by defendant. Count D, after setting out the fact that defendant was a municipal corporation, charged with the duty of keeping its public ways in a reasonably safe condition and free from defect, alleged that on the night of December 26, 1912, and prior thereto, defendant maintained a public way, to wit, an electric light plant which was used by it for the purpose of affording or furnishing electricity and electric lights to the city of Cullman, and to the inhabitants thereof. Then follows a statement of fact similar to that contained in the opinion. With these ad-

[Bloom v. City of Cullman.]

ditional allegations; that the maintenance of said chain, and within sufficiently close proximity to the surface of said street so that pedestrians or travelers while upon said street would come in contact therewith, constituted a defect in said public ways so maintained by defendant, and defendant failed to remedy said defect, and said defect had existed for such an unreasonable length of time as to raise a presumption of knowledge on the part of defendant's city council, and plaintiff's intestate, while upon said street, came in contact with said chain, and as a proximate consequence thereof his death was caused. Count E is the same as D, with the additional allegation that defendant did not provide any guard or means of preventing said chain from becoming charged with a deadly current of electricity from defendant's wire. Demurrer 13 is as follows:

Said counts do not show that said injury or wrong was done or suffered through the negligence, carelessness, or unskillfulness of some agent, officer, or employee of defendant engaged in the work of said defendant, and while acting in the line of his duty, and does not show that said wrong or injury complained of was due to the negligence, carelessness, or failure to remedy some defect in the streets, alleys, public ways, or buildings of said city after the same had been called to the attention of the council, or after the same had remained for a reasonable length of time as to raise a presumption of knowledge of the defect on the part of said city.

TENNIS TIDWELL, for appellant. A. A. GRIFFITH, and CALLAHAN & HARRIS, for appellee.

McCLELLAN, J.—The plaintiff's (appellant's) intestate came to his death through contact with an electrically charged "chain" used by the city of Cullman in raising and lowering a street light operated by the municipality to light public thoroughfares therein. The street light was suspended over the street, on a cable running from the tops of two poles. Feed wires conveying electric current were strung from these poles to the thus suspended arc light. The suspension cable was near the feed wires; and there was evidence tending to show that the insulation on the feed wires had rotted and had fallen away, exposing the feed wire to at least possible contact with the suspension cable and the "chain" or with some of the metal mechanism connected therewith. The "chain" ran from a small windlass fastened to

the pole about four feet from the surface of the street, thence up the pole to a wheel and thence along, near the suspension cable, to another wheel under which the "chain" was attached to the arc light.

The defendant's witness Ed Imbush testified as follows: "I recollect the night Mr. Bloom received an injury down on First street and Second avenue. Mr. Bloom was my brother-in-law; he married my sister. I was with him the night he was injured. He was injured down on First street in the city of Cullman, Ala. We were going on that night to the Cullman Quartet Club. The Quartet Club was over on the other side of town, in the city of Cullman, Ala., in the southwest part of town. We were going from the north on that night. We were on the concrete sidewalk in front of Mr. Tilford's property on Second avenue on that night at the time Mr. Frank Bloom received his injury. I was about 15 or 20 steps ahead of him. I was about middle ways of the First street when he was injured at the pole. There was a remark made about the light not burning bright, and I think Frank Bloom made the remark. He said by going down and jerking the chain he could make the carbons meet on the light and make it burn brighter. At that time he was on his way to the dance hall. He did not have anything to do with the electric light, and he was not in any way connected with the company, nor had he any duties to perform in connection with the light. I heard him say he could make the light burn brighter by jerking the chain. I walked right on past the pole and on the sidewalk, and in a few seconds after that I saw Mr. Bloom [around] on the pole and on the chain. At that time it was raining a little, kind of drizzling. I guess it was muddy on the street; it was a little muddy [on] the sidewalk. This was about 7 o'clock at night. My brother Johnnie was right along with Mr. Bloom, and my mother and sister were in front of me, and we were all going to the same place. I judge my mother and sister were about 40 or 50 steps in front of me."

On cross-examination this witness testified as follows: "The statement I heard Mr. Bloom make about taking hold of the chain and jerking it to make the light burn brighter, was back about 300 or 400 feet from the light, and there was nothing else said about it. We proceeded on down from the street towards the place where we were going. The first I knew of the death of Mr. Bloom was when I was something like 15 or 20 feet from

the light.    Mr. Bloom was standing up, holding to the chain.    He was not suspended off the ground.    He was dead when I got to him.    I did not see him go out there."

No eyewitness to the tragedy, or to the acts of Bloom just before and at the time he came in contact with the "chain" was introduced.    It otherwise appears that to come in contact with the "chain" a pedestrian traveling the streets, walking as Bloom was, must have left, or turned aside from, the usual walkway. The trial court gave the general affirmative charge for the defendant.    It is asserted in briefs for appellant that the trial court entertained the opinion that, according to the testimony of Ed Imbush quoted above, Bloom was, as a matter of law, guilty of contributory negligence barring a recovery in this action.    In the brief for the appellee, prepared by one of defendant's counsel who was not present at the trial, it is stated with commendable candor that, if that was the theory upon which the trial court proceeded in giving the general affirmative charge for the defendant, "then we cannot conscientiously defend that action of the court in view of the record in the case."    Our opinion is that, if the court so instructed the jury upon the theory stated, the result was error; that the court, on the evidence before it, was not authorized to affirm, as a matter of law, that Bloom's death was proximately caused by his own negligence.    More particular reference to that phase of the case will be later made.

Code, § 1273, is as follows:    "No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless said injury or wrong was done or suffered through the neglect, carelessness, or unskillfulness of some agent, officer, or employee of the municipality engaged in work therefor and while acting in the line of his duty, or unless the said injury or wrong was done or suffered through the neglect, carelessness, or failure to remedy some defect in the streets, alleys, public ways, or buildings after the same had been called to the attention of the council, or after the same had existed for such unreasonable length of time as to raise a presumption of knowledge of such defect on the part of the council, and whenever the city or town shall be made liable to an action for damages by reason of the unauthorized or wrongful acts, or the negligence, carelessness, or unskillfulness of any person or corporation, then such person or corporation shall be liable to an action on the same account by the party so injured."

[Bloom v. City of Cullman.]

In construction of that section this was said in *City of Birmingham v. Carle*, 191 Ala. 539, 541, 68 South. 22, L. R. A. 1915F, 797: "By Code 1907, § 1273, the liability of municipalities for damages for injuries done or suffered is limited to two distinct classes of negligent misconduct or omission, viz.:   (a) Where the wrong done or suffered was the proximate result of culpable act or omission of some agent, officer, or employee then engaged, within the line of his duty, in the municipality's service; (b) where the wrong done or suffered was the proximate result of culpable municipal omission 'to remedy some defect in the streets, alleys, public ways, or buildings, after the same (i. e., defect as defined) has been called to the attention of the council, or after the same (i e., defect as defined) had existed for such unreasonable length of time as to raise a presumption of knowledge of such defect on the part of the council.'   Further in said section (1273) it is provided, touching the second (b) classification, ante, that where the liability of the municipality results from the breach by the municipality of its duty to remedy the defect, as defined in the statute—a defect to the existence of which the attention of the council had been called, or of which knowledge may be imputed in consequence of the unreasonable length of time the defect has existed, unremedied when the injury was done or wrong was suffered—the person or corporation culpable in respect of the existence of the defect as defined shall be 'liable to an action on the same account by the party so injured.'   In the first class (a) are wrongs or injuries resulting from negligence of agents, etc., of the municipality, consistent with the doctrine of respondeat superior; and in the second class (b) are wrongs or injuries for which the municipalities are only liable for culpable neglect to remedy a condition negligently created or made or allowed to exist by a person or corporation not related in service to the municipality—a stranger to the municipal service or function."

(1) This complaint does not appear to have been drawn with special reference to and regard for the provisions of the statute (section 1273).   In view of the evidence, as well as in view of the means to which the pleader attributes the death of Bloom, the pleader should have conformed his counts to that phase of the rule of the statute (section 1273) which this court nominated "a" in the opinion in *City of Birmingham v. Carle, supra.*   If there was negligent dereliction in allowing or permitting the "chain" to become charged with electricity, it must have been

the result of a breach of duty on the part of some agent, officer, or employee of the municipality. This objection to the counts of the original complaint was at least mooted by the thirteenth ground of the demurrer, filed March 2, 1914, which the report of the appeal will contain. The fact, if so, that the "chain" became electrified, to Bloom's injury, as the result of negligence on the part of some one for whose omission or want of care the municipality was accountable, did not make a condition within class "b" as reiterated in the opinion in *City of Birmingham v. Carle, supra,* as from the statute (section 1273). Hence the court did not err in sustaining the demurrers to counts D and E of the amended complaint.

Counsel for appellee would justify the action of the court in giving the general affirmative charge for the defendant on the theory that if unaided by the application of the rule of res ipsa loquitur, the plaintiff's particular allegations of negligence were not at all supported in the evidence, and that the rule could not be applied in this instance, because it is only available where contractual relations exist between the parties.

At section 59 of 1 Shear. & Red. on Neg. (5th Ed.) it is said: "In many cases the maxim 'res ipsa loquitur' applies. The affair speaks for itself. The accident, the injury, and the circumstances under which they occurred are in some cases sufficient to raise a presumption of negligence, and thus cast upon the defendant the burden of establishing his freedom from fault. Proof of an injury occurring as the proximate result of an act of the defendant, which would not usually, if done with due care, have injured any one, is enough to make out a presumption of negligence. When a thing which causes injury is shown to be under the management of the defendant, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from a want of care. So also: 'Where it is shown that the accident is such that its real cause may be the negligence of the defendant, and that, whether it is so or not, is within the knowledge of the defendant, the plaintiff may give the required evidence of negligence, without himself explaining the real cause of the accident, by proving the circumstances, and thus raising a presumption that, if the defendant does not choose to give the explanation, the real cause was negligence on the part of the defendant.' "

[Bloom v. City of Cullman.]

(2-9) While the Supreme Court of Pennsylvania (see (*Stearns v. Ont. Spinning Co.*, 184 Pa. 519, 39 Atl. 292, 39 L. R. A. 842, 63 Am. St. Rep. 807, 3 Am. Neg. Rep. 487) seems to accord a measure of qualified adherence to the view that the rule of rep ipsa loquitur only applies where the parties bear some contractual relation, the weight of modern authority, grounded, we think, in sounder reason, is to the distinct effect that contractual relationship between the parties is not essential to the application of the rule.—Curtis on Law of Elec. §§ 593, 594, and notes; 29 Cyc. pp. 590-592, and notes. The rule was applied in *Alabama City, G. & A. R. Co. v. Appleton*, 171 Ala. 324, 331, 332, 54 South. 638, Ann. Cas. 1913A, 1181, and in *Town of Athens v. Miller*, 190 Ala. 82, 66 South. 702; and no reason appears to deny it application where, as here, a pedestrian in a public street was stricken by contact with electric current passing from feed wires to a street light and communicated to the "chain" we have before described, through some deficiency in the maintenance or repair of the mechanism owned by and under the supervision and control of. the municipality. The degree of care resting upon the municipality, with respect to the means of transmitting its electric current over public thoroughfares was high and exacting, commensurate with the very dangerous agency it was employing in lighting its streets.—Joyce on Elec. § 445. Whether Bloom was guilty of contributory negligence, barring a recovery by his personal representative, was a question to be determined by the jury. The burden of proof to establish contributory negligence rests upon the party pleading it.—*Bromley v. Birmingham Ry. Co.*, 95 Ala. 403, 11 South. 341. Under the evidence now presented essential elements of the affirmative of that issue rested in inference, in deduction from circumstances proven, thus precluding any right in the court to pronounce thereon either way as a matter of law.—*Tabler v. Sheffield Co.*, 87 Ala. 305, 309, 6 South. 196. From testimony favorable to plaintiff's theory of liability it was open to the jury to conclude that, the light being dim, Bloom went to the pole and took hold of the "chain" for the purpose of shaking the arc light, by shaking the "chain," and thereby causing the mechanism of the arc light to perform its function of putting the carbon therein in proper relation to effect an efficient service. The remark attributed to Bloom by the witness Ed Imbush, whose testimony has· been quoted, tended to establish that conclusion. On the other hand, W. S. Schlosser testified that

Bloom had recently previously made statements to him criticising the service the city's street lights were giving, and asserting that he (Bloom) could put them out by jerking the "chain," whereupon the witness warned him of the danger of so doing, to which Bloom made careless reply. If Bloom knew, or had been warned or had reason to know, that the "chain" was then charged with a current of electricity from the feed wires, and with such knowledge, or without heeding the admonitions of the due care such warning or reason should have given him as a reasonably prudent man, and he touched the "chain" so charged with electricity, he was guilty of contributory negligence barring a recovery in this action.—Curtis on Elec. §§ 531, 532. If Bloom undertook to improve the light by shaking the "chain," not knowing the "chain" was charged with electricity, and having no knowledge of facts and circumstances that would serve to warn or to deter a reasonably prudent person in touching the "chain," or if he had recently theretofore done so, or had seen others do so, in safety, then his act in handling the "chain" on that occasion was not contributory negligence barring a recovery in this action.—Curtis on Elec. §§ 531, 532. But, if Bloom knew, or in the exercise of due care should have known, the danger of handling the "chain," that it was or would probably be, charged with electricity from current on the feed wires, and he did purposely touch the "chain," and was thereby killed, he was guilty of contributory negligence barring a recovery in this action. Where the question of negligence vel non is the inquiry, the law contemplates the ordinarily prudent man and predicates its exaction of duty, of care, and of prudence in the circumstances upon the conduct, caution, or precaution a reasonably prudent man likewise circumstanced would have taken or observed.—*Cent. of Ga. Ry. Co. v. Foshee,* 125 Ala. 199, 215, 216, 27 South. 1006. It is by this standard the jury should determine the inquiry whether Bloom's act in touching the "chain" was, under all the circumstances, the act of a reasonably prudent man. If such an one would not have handled the "chain," then his death must be attributed to his own carelessness.

The pleadings on both sides of the line need to be reformed to clearly present the issues fairly litigable between thes parties.

The judgment is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.