180 So. 712

**ALABAMA POWER CO. v. FAULKEN-BERRY.**

**8 Div. 874.**

Supreme Court of Alabama.
April 21, 1938.

Thos. F. Woodroof, of Athens, and Martin, Turner & McWhorter and J. C. Blakey, all of Birmingham, for appellant.

Geo. C. Johnson and J. G. Rankin, both of Athens, for appellee.

BROWN, Justice.

This is an action on the case by appellee against the appellant for personal injury and property loss, in consequence of plaintiff and his team of mules coming in contact with a deadly current of electricity drawn from defendant's high power wires maintained along the margin of a public highway, by a broken wire overlapping said power wires, resulting in the instant death of the mules, and shock to plaintiff's person, when he alighted from the wagon after the mules had fallen to the ground.

The complainant states the case in two counts, the first claiming damages for the loss of the mules, ascribing their death to the defendant's negligence; and, the second claims damages for personal injury to the plaintiff, alleged to have resulted from defendant's negligence. The plea was the general issue, pleaded in short, by consent, with leave to offer evidence of any matter that would constitute a good defense if specially pleaded.

The trial resulted in a verdict and judgment for the plaintiff, assessing the damages at $400.

The evidence adduced shows that the defendant had the lawful right to maintain and operate its power line along the margin of the highway, the fact of the casualty and the loss and injury to plaintiff, and its causation by coming in contact with a deadly current of electricity, drawn from defendant's power line by a broken telephone wire which overlapped defendant's line and led to the earth in or across plaintiff's private wagon road leading from the highway. That defendant's power wires were strung on poles from 30 to 33 feet above the surface of the margin of the highway, and were "insulated with 17KV insulator. The insulation was at said time and is now in good condition." That one White or his mother owned and had formerly operated and maintained a telephone line along the same margin of the highway on which defendant maintained its line of power wires.

This telephone line known as "The Tom White telephone exchange" extended from Bethel to Ardmore, and the wires were strung on poles 20 feet high and were approximately under the power wires all the way. The telephone line had been out of

use or abandoned around 12 months, and some of the poles of the telephone line were down "one now and then." The power line carried a voltage of 11,500. That the telephone pole immediately north of where the mules were killed "was broke plumb off and leaning over," and had been in that condition 4 or 5 weeks "prior to the time this accident occurred." The defendant's transmission line was inspected every 10 days by its employee.

The plaintiff testified: "In January of last year I lived about four miles south of Ardmore on the Bee Line Highway. On January 7th of last year I was going along that highway in a wagon. I was going to haul some wood and I had to use the highway to get to the place I was going to get the wood. When I was about to leave the highway with my wagon and team that morning, I left the highway and drove down on the side of the highway to where I was aiming to go after my wood, and all at once my mules fell. That was after I left the travelled portion of the highway. I was still on the right-of-way of the highway and my mules just fell dead all of a snap. I was driving and I stepped out on the left side of the wagon right over the fore wheels and when I hit the ground I fell. It just knocked me head over heels. When I hit the ground from the wagon I was knocked out. Balls of fire just flew from my feet seemed like, big as my fist. I didn't know anything for some little bit. My son was in the wagon with me on that occasion. The mules were dead by the time they hit the ground. * * * The place where my mules fell dead was right under the electric line. There was also a telephone line there."

The witness here referred to a diagram showing the location of the highway, the defendant's line, and the telephone line, and further testified: "I was going north and this center here is the travelled portion of the highway. I had driven off the travelled portion over on the west side. This is made to represent my wagon and team, and I was just about the margin of the highway. This red line is made to represent the telephone line. After this thing was over I just couldn't tell whether there was a broken telephone wire there. I just couldn't tell you whether it was there or not. I was taken home immediately after this happened. * * * Prior to the time the accident occurred I noticed the telephone line down near the ground where the accident occurred. It was pretty low. It was down there that morning. It was laying practically on the ground. I left the highway right about there (indicating on the diagram in evidence). The ground there to the west of the highway off of the paved portion of the highway is an incline or bank. I drove down that incline or bank. To the best of my judgment it was about four or five feet down to where the mules dropped dead, four feet below the paved portion of the highway. Of course, it was not that much up there where I left the highway. It was just a gradual slope but it was about four feet below the paved portion of the highway. There was a road along there where the accident occurred. I used that road and had used it before. It was a wagon road and not a place for automobiles: * * * No one other than me used that wagon road. I just used it in hauling off of my farm. * * * At the point where my wagon was the telephone wires were practically on the ground. They were not as much as two or three feet from the ground. My wagon did not travel or pass over the telephone wires. I never crossed no wires. I did not measure how close my wagon got to the telephone wires. To the best of my judgment the wagon tongue had maybe crossed the wires that were down, the telephone wire that was down on the ground, and this left fore wheel was practically against the wire, and it was at that location and at that situation that the accident occurred. * * * After the accident occurred I noticed a portion of one of the telephone wires up over one of the electric wires to the rear of the wagon. I guess that it was ten or twelve feet to the rear * * * of the wagon. * * * There was just one of the telephone wires up over the electric wire. That telephone wire extended clear down to the ground. The weather that morning was wet. It had been raining early that morning. * * * I didn't see that telephone wire up over the electric wire before the accident."

There is nothing in this evidence showing or tending to show that the telephone wire was caused to break, or snap and overlap the defendant's power wires other than the dilapidated condition of the abandoned telephone line subjecting said telephone wire to the pull and strain of the fallen telephone poles, and the dampness from the rainfall on the day of the casualty.

If this situation and the dilapidated condition of the telephone line, and its proximity to defendant's power wires, was such as to create a condition of danger to third persons, and a reasonably prudent man would have anticipated danger therefrom, and, this under the evidence was a question for jury decision, it was not only the duty of the owner, but the duty of the defendant, to remove the telephone wires or otherwise correct such dangerous condition. Dwight Mfg. Co. v. Word, 200 Ala. 221, 75 So. 979; Montgomery Light & Water Power Co. v. Thombs, 204 Ala. 678, 87 So. 205; Alabama Power Co. v. Matthews, 226 Ala. 614, 147 So. 889.

The substance of the doctrine res ipsa loquitur, applicable to the instant case, is, when the plaintiff adduces evidence showing the fact of the casualty, the attending circumstances, that it was caused by an instrumentality or force within the keeping or control of the defendant, and is such as, in the ordinary course of events, does not happen without negligence, this is sufficient, prima facie, to shift to the defendant the burden of going forward with the evidence. Bloom v. The City of Cullman, 197 Ala. 490, 73 So. 85; Langley Bus Co. v. Messer, 222 Ala. 533, 133 So. 287; Town of Athens v. Miller, 190 Ala. 82, 66 So. 702; Demopolis Telephone Co. v. Hood, 212 Ala. 216, 102 So. 35.

In Alabama Power Co. v. Cooper, 229 Ala. 318, 156 So. 854, cited and relied on by appellant, the injury was caused by the intervening act of a third person, the plaintiff's husband, in throwing the aerial wire over the uninsulated light wires, proximately causing the injury of plaintiff in that case.

In Golson v. W. F. Covington Mfg. Co., 205 Ala. 226, 87 So. 439, the "barb wire" which transmitted the current to the boy and killed him was "thrown [over the power wires] by some unknown person," and it was held that the condition produced thereby had not existed for such length of time as to charge the defendant with the duty of warning the boy of the danger incident thereto.

In Sheffield Co. v. Morton, 161 Ala. 153, 49 So. 772, the person injured went into a place of obvious danger, and it was held that there was a failure of proof of the averments of the complaint "that there was such a customary resort by the public generally, or by children to a bluff where the wires were maintained so known to the electric company, as to devolve upon the company, the duty to protect the wire."

Here, the plaintiff was in a public place where he had the right to be, and was injured by a substance or force in defendant's control, and the casualty was such as does not ordinarily occur without negligence. The general condition of the telephone line had existed for such length of time as to charge the defendant with notice or knowledge, and defendant failed to meet the presumption of negligence arising from the facts and circumstances of the casualty.

There is a slight intimation in the brief for appellant that the telephone wire was caused to break and overlap the defendant's line by the act of the plaintiff in driving over the telephone wire. This is not supported by the plaintiff's testimony, which goes to show that neither the mules or the wagon crossed the wire, and is negatived by the fact that the power wires were insulated, and it is not likely that, if the telephone wire had at the instant of the injury to the mules been broken and overlapped the defendant's wires, it would have immediately drawn the current from said power wires. It is more likely that the telephone wire had been across the power wire for such length of time as to wear or burn through the insulation before it became charged with the current of electricity.

However, these are facts and circumstances which the applied doctrine res ipsa loquitur required the defendant to bring forward. Bloom v. City of Cullman, supra; Lawson v. Mobile Electric Co., 204 Ala. 318, 85 So. 257.

The judgment here is that the defendant was not due the affirmative charge. This disposes of the only question argued.

Affirmed.

GARDNER and THOMAS, JJ., concur.

BOULDIN, FOSTER, and KNIGHT, JJ., concur in the conclusion that the evidence presented a question for the jury, but do not think the doctrine res ipsa loquitur applies.

ANDERSON, C. J., is of opinion that defendant was due the affirmative charge.

FOSTER, Justice (specially concurring).

I have no disposition to be hypercritical, but I am of the opinion that this case is not one which gives rise to the doctrine of res ipsa loquitur, though I concede that the jury may be authorized to draw an inference of negligence from the facts proven.

An application of the doctrine here, while not prejudicial, may be the occasion for its misapplication, when it would be prejudicial. The idea lost sight of by Justice BROWN in this case is that the doctrine is a presumption which arises in the absence of evidence, when defendant has peculiar knowledge of the facts, and therefore able to dispel any supposition of negligence where the accident occurred by reason of the manner in which defendant operated its business or appliances, not open to ordinary observation. It is therefore distinguished from an inference which the jury may draw from proven facts. It takes the place of proof, but does not furnish a rule by which proof is to be interpreted. Lawson v. Mobile Electric Co., 204 Ala. 318, 85 So. 257. This distinction is sometimes not fully given effect, and the term is therefore inaccurately used. It was so pointed out in our case of Mathews v. Alabama Great So. R. Co., 200 Ala. 251, 76 So. 17; 45 Corpus Juris 1198, 1205; Lawson v. Mobile Electric Co., supra; and again fully discussed, as stated above in this memorandum, in Reichert Milling Co. v. George, 230 Ala. 3, 162 So. 393.

I am authorized to say that BOULDIN and KNIGHT, JJ., concur in the foregoing.