WOODALL, Justice.
 

 Lee George appeals from summary judgments in favor of Alabama Power Company (“APCo”) in his action seeking compensation for injuries he sustained when he came in contact with a wire owned by APCo. We affirm in part, reverse in part, and remand.
 

 I. Procedural and Factual Background
 

 Viewed in the light most favorable to George, the nonmovant, the evidence indicates the following. On May 12, 2003, George was electrically shocked and seriously injured while he was working as a traffic-signal technician for the City of Bir
 
 *363
 
 mingham (“the City”). The injury occurred as one of George’s three coworkers lifted him in the bucket of a “bucket truck” to install a new traffic signal over the intersection of Avenue V and 18th Street in Ensley. The signal was to be suspended from a line strung between two steel poles owned by the City.
 

 APCo owns and operates four lines at that intersection. The three uppermost lines are high-voltage primary-distribution lines (hereinafter referred to as the “primary lines”). The lowest of the four lines is a neutral wire, which should not be energized.
 

 According to witnesses,
 
 [1]
 
 George’s neck contacted the lowest of the four wires — the
 
 neutral
 
 wire — and he was immediately enveloped in smoke and flames. He remained in contact with the wire and was burning and convulsing in the electricity for several minutes until rescue personnel arrived at the scene. George was then disconnected from the wire by lowering the bucket, and his burning clothes were extinguished by rescuers. As a result of the accident, George’s left arm and two fingers of his right hand were amputated and he suffered extensive burns to his neck, back, and abdomen.
 

 The accident occurred approximately half a mile from APCo’s “Pratt City substation” (hereinafter referred to as “the substation”). The electrical system between the substation and the accident site was grounded in a “multi-ground wire system,” which consists of a series of 8-foot or 10-foot rods (hereinafter referred to as “grounding rods”) implanted in the ground at each power pole and connected to the pole by a ground wire.
 

 On May 3, 2004, George sued APCo, alleging that APCo had negligently and/or wantonly constructed, operated, or maintained its power lines, and that its negligence or wantonness had caused his injuries. On September 27, 2005, APCo moved for a partial summary judgment. That motion challenged only the sufficiency of the evidence of wantonness.
 
 [2]
 
 The trial court entered a partial summary judgment in favor of APCo on the wantonness claim.
 

 After a three-week trial, the jury was unable to reach a verdict on the negligence claim, and the court declared a mistrial. Subsequently, George engaged the services of Dr. Charles E. Benedict and Daniel H. Craven to provide expert testimony as to causation of the accident. APCo then filed various motions, including a motion
 
 in limine
 
 to exclude the opinions of Benedict and Craven, and a motion for a summary judgment as to the negligence claim.
 

 On September 4, 2007, the trial court entered a summary judgment in favor of APCo. In that connection, it also granted APCo’s motion
 
 in limine
 
 to exclude the opinions of George’s causation experts. Regarding Benedict, the court held that “his knowledge, skill, experience, training and/or education [did not] meet[] a minimum threshold to offer an opinion as to electrical power distribution issues.” It also concluded that Benedict’s opinion was “based on neither firsthand knowledge or admissible evidence.” The court further
 
 *364
 
 concluded that Craven’s opinions were based on mere “conjecture.” Finally, the court stated:
 

 “[T]here is no evidence ... from which a fair minded person could reach a conclusion based upon an inference of fact as to the cause of the energized neutral. There are merely conjectures as to what might have caused the neutral wire to become energized, with no evidence to corroborate those conjectures.”
 

 George filed a motion to alter, amend, or vacate that judgment, citing principles and authority relating to the doctrine of
 
 res ipsa loquitur. In
 
 oral argument of that motion, George’s counsel expressly invoked the doctrine. During that argument, the following colloquy occurred:
 

 “[The court:] I think I’m now clear on where you are coming from, [counsel]. I think that, as I understand your position ..., that once there was, for the purposes of summary judgment, an agreement that he
 
 hit the neutral line,
 
 that, therefore,
 
 that alone is sufficient to get the case to the jury.
 

 “[George’s counsel:] Yes, ma’am.
 

 “[The court:] And under the theory of
 
 res ipsa [loquitur
 
 ]?
 

 “[Counsel:] Yes, ma’am.
 

 “[The court:] I’m clear and I understand y’all’s position on that.
 

 “[The court:] Basically, my opinion is that ...
 
 res ipsa [loquitur
 
 ] does not apply in this case. I think that, under these circumstances, you have a clear issue to take up, if that is what you are trying to set up in terms of what you want to set up on appeal. I am very clear that I do not think that the law, in this area, is such that
 
 res ipsa [loqui-tur I
 
 applies. If I’m incorrect, then, of course, the [Supreme Court] will, I’m sure, tell me that.
 

 “[The court:] And if it is your position that
 
 res ipsa [loquitur I
 
 should apply, then I — and if that is, indeed, correct,
 
 then my order is clearly wrong
 
 — if
 
 res ipsa [loquitur
 
 ] does not apply, then, I believe my order is correct. Since I do not believe that
 
 res ipsa [loquitur
 
 ] applies as a matter of law, then, you know, I’m not inclined to change my order.”
 

 (Emphasis added.) The trial court denied George’s motion, and George appealed, contending, among other things, (1) that the trial court erred as a matter of law in holding that the doctrine of
 
 res ipsa loqui-tur
 
 did not apply in this case to preclude the summary disposition of his negligence claim, and (2) that he had presented sufficient evidence in support of his wantonness claim.
 

 II. Discussion
 

 APCo owes “ ‘a duty to conduct and operate its electric utility business in a reasonably safe and prudent manner so as to avoid unreasonable risks and dangers to its customers and to the public.’”
 
 Dunn v. Wixom Bros.,
 
 493 So.2d 1356, 1359 (Ala.l986)(quoting
 
 Alabama Power Co. v. Robinson,
 
 404 So.2d 22, 23 (Ala.1981)). “An electric company is not an insurer nor is it under obligation to so safeguard its wires that by no possibility can injury result therefrom.”
 
 Alabama Power Co. v. Berry,
 
 254 Ala. 228, 233, 48 So.2d 231, 235-36 (1950). However, it owes the duty “to use that degree of care commensurate with the risk and danger involved and the public has the right to assume that its high-voltage wires will not be negligently maintained.” 254 Ala. at 232, 48 So.2d at 234.
 

 A. Negligence and Res Ipsa Loquitur
 

 “Proof of negligence requires the establishment of a duty and a breach thereof that proximately caused damage
 
 *365
 
 to the plaintiff.
 
 Thompson v. Lee,
 
 439 So.2d 113, 115 (Ala.1983). Mere proof that an accident and an injury occurred is generally insufficient to establish negligence.
 
 Id.; Mobile Press Register, Inc. v. Padgett,
 
 285 Ala. 463, 233 So.2d 472 (1970). However, in limited circumstances, a jury will be allowed to
 
 infer
 
 negligence if the doctrine of res
 
 ipsa loquitur
 
 is deemed to be applicable.
 
 Thompson, supra.”
 

 South Coast Props., Inc. v. Schuster,
 
 583 So.2d 215, 217 (Ala.1991) (emphasis added).
 

 “For the doctrine [of
 
 res ipsa loqui-tur]
 
 to apply, there are at least three essentials: (1) the defendant must have had full management and control of the instrumentality which caused the injury; (2) the circumstances must be such that according to common knowledge and the experience of mankind the accident could not have happened if those having control of the management had not been negligent; (3) the plaintiffs injury must have resulted from the accident. ...”
 

 Berry,
 
 254 Ala. at 236, 48 So.2d at 238 (emphasis added).
 

 “ ‘The plaintiff need not ... conclusively exclude all other possible explanations .... It is enough that the facts proved reasonably permit the conclusion that
 
 negligence is the more probable explanation. ..Kmart Corp. v. Bassett,
 
 769 So.2d 282, 289 (Ala.2000) (Hooper, C.J., dissenting and quoting
 
 Restatement (Second) of Torts
 
 § 328D cmt. e (1965)) (emphasis added).
 

 Whether the presumption of negligence arises in the first instance is ordinarily a question of law, which we review
 
 de novo. Maroules v. Jumbo, Inc.,
 
 452 F.3d 639, 643 (7th Cir.2006);
 
 Heastie v. Roberts,
 
 226 Ill.2d 515, 877 N.E.2d 1064, 315 Ill.Dec. 735 (2007);
 
 Pacheco v. Ames,
 
 149 Wash.2d 431, 436, 69 P.3d 324, 327 (2003). Whether the presumption is rebutted is a question for the jury.
 
 Smith v. Kennedy,
 
 43 Ala.App. 554, 563, 195 So.2d 820, 828 (1966).
 

 As early as 1916, this Court recognized the applicability of the doctrine of
 
 res ipsa loquitur
 
 in the context of an electrocution caused by a provider of electricity. In
 
 Bloom v. City of Cullman,
 
 197 Ala. 490, 73 So. 85 (1916), Frank Bloom, a pedestrian on a sidewalk in the City of Cullman was killed when he grasped a “ ‘chain’ used by the city of Cullman in raising and lowering a street light operated by the municipality to light public thoroughfares therein.” 197 Ala. at 492, 73 So. at 86. There were no eyewitnesses to the accident at the actual moment of contact. 197 Ala. at 494, 73 So. at 87. A complaint filed against the City of Cullman by Agnes Bloom, the adminis-tratrix of Bloom’s estate, averred that the City of Cullman negligently allowed the chain to become “charged with a [deadly] current of electricity.” 197 Ala. at 491, 73 So. at 85-86. “The trial court gave the general affirmative charge for the defendant,” 197 Ala. at 494, 73 So. at 87, and judgment was entered for the City of Cull-man.
 

 The resolution of Bloom’s appeal turned on the applicability of the doctrine of
 
 res ipsa loquitur.
 
 197 Ala. at 496-97, 73 So. at 88. The only evidence as to the source of the electric current in the chain was the proximity of the chain and a suspension cable that held the streetlight to “[f]eed wires conveying electric current.” 197 Ala. at 492, 73 So. at 86. “[T]here was evidence tending to show that the insulation on the feed wires had rotted and had fallen away, exposing the feed wire to at least
 
 possible contact
 
 with the suspension cable and the ‘chain’ or with some of the metal mechanism connected therewith.”
 
 *366
 
 197 Ala. at 492, 73 So. at 86 (emphasis added).
 

 This Court reversed the judgment for the City of Cullman, holding that the doctrine of
 
 res ipsa loquitur
 
 was applicable in the case, “where ... a pedestrian in a public street was stricken by contact with electric current passing from feed wires to a street light and communicated to the ‘chain’ ..., through
 
 some deficiency
 
 in the maintenance or repair of the mechanism owned by and under the supervision and control of the municipality.” 197 Ala. at 497, 73 So. at 88 (emphasis added). The Court explained:
 

 ‘“In many cases the maxim
 
 “res ipsa loquitur
 
 ” applies. The affair speaks for itself. The accident, the injury, and the circumstances under which they occurred are in some cases sufficient to raise a presumption of negligence, and thus cast upon the defendant the burden of establishing his freedom from fault. Proof of an injury occurring as the proximate result of an act of the defendant, which would not usually, if done with due care, have injured any one, is enough to make out a presumption of negligence.
 
 When a thing which causes injury is shown to be under the management of the defendant,
 
 and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from a want of care. So also: “Where it is shown that the accident is such that its real cause may be the negligence of the defendant, and that, whether it is so or not, is within the knowledge of the defendant, the plaintiff may give the required evidence of negligence, without himself explaining the real cause of the accident, by proving the circumstances, and thus raising a presumption that,
 
 if the defendant does not choose to give the expla
 
 nation>
 
 the real cause was negligence on the part of the defendant.'”
 
 ’ ”
 

 197 Ala. at 496, 73 So. at 88 (emphasis added) (quoting 1
 
 Shearman & Redfield on Negligence
 
 § 59 (5th ed. 1898)).
 

 Similarly, we agree with George that the facts and circumstances render this case particularly appropriate for the application of the doctrine. It is apparent that George does not
 
 know
 
 why he was injured, assuming, as we do for purposes of review of a summary judgment, that he contacted the neutral wire. He has proposed various theories as to how the wire became energized in the first place. One theory is that APCo allowed its primary lines to “sag” so closely to the neutral wire that something' — either the wind, a tree limb, or the collision of an automobile with a power pole — caused the wires to make contact. He has also proposed that, regardless of how the neutral line became energized, APCo’s grounding system was somehow ineffective. The trial court characterized the testimony of his expert as merely “conjecture” and speculation. Nevertheless, it is
 
 undisputed
 
 that, in a properly functioning electrical-distribution system in which the neutral wire is properly grounded, the neutral wire
 
 cannot
 
 become energized and, thus, one who touches it will not be injured. Obviously, APCo’s system was not functioning properly when George came in contact with the neutral wire.
 

 Moreover, whether the real cause of the accident is attributable to APCo’s negligence is peculiarly “within the knowledge of [that] defendant.”
 
 Bloom,
 
 197 Ala. at 496, 73 So. at 88. Indeed, it is in APCo’s own interest to determine the cause of this accident. This is so, because its own personnel may well be at risk operating a system in which a serious malfunction oc
 
 *367
 
 curs and remains inexplicable. The ordinary-occurrence prong is satisfied.
 

 However, APCo argues that the management-and-control prong is not satisfied. In particular, APCo says:
 

 “George was part of a City work crew that was managing and controlling the lines at the time of the accident, and the poles supported telecommunication lines that
 
 APCo did not own,
 
 allowing the owners of those lines some access as well.
 
 APCo did not have exclusive management or control of the intersections or the tree limbs.”
 

 APCo’s brief, at 51-52 (emphasis added) (citations to the record omitted).
 

 This argument is entirely inappo-site, for two reasons. First, it is undisputed that the electrical-distribution system was owned and managed by APCo. George was not attempting to manage, control, or manipulate any part of
 
 that
 
 system but was, instead, working from a bucket truck on
 
 the City’s own
 
 poles and wires when he was injured by contact with a portion of
 
 APCo’s
 
 system. Second, for APCo to have the requisite management and control to invoke the application of the doctrine of
 
 res ipsa loquitur,
 
 it need not have charge of all such collateral processes as weather and traffic. Instead, APCo must produce evidence that one such collateral process caused George’s injury without any negligence on its part. See
 
 Khirieh v. State Farm Mut. Auto. Ins. Co.,
 
 594 So.2d 1220, 1224 (Ala.1992) (the “ ‘control requirement is subordinated to its general purpose, that of indicating that it probably was the [alleged wrongdoer’s] negligence that caused the accident’ ” (quoting 57B Am.Jur.2d
 
 Negligence
 
 § 1874 (1989))).
 

 APCo also relies on
 
 Alabama Power Co. v. Berry,
 
 supra. Its reliance is misplaced. To be sure, this Court held in
 
 Berry
 
 that the trial court erred in refusing APCo’s requested affirmative charge. It did so, however—not because the doctrine of
 
 res ipsa loquitur
 
 is not applicable in an electrocution case, as APCo reads the opinion, see
 
 Bloom, supra
 
 — but because the instrument alleged to have caused the injury, namely, a fine piece of copper wire, of the sort used “in the coil of a T-model Ford,” 254 Ala. at 233, 48 So.2d at 235, “was not owned, maintained or controlled by the defendant.” 254 Ala. at 236, 48 So.2d at 238. That small wire, which was allegedly dangling from APCo’s power line, “was no part of its equipment nor under its control, and information or knowledge in regard to it was as accessible to the plaintiff as [APCo].”
 
 Id.
 

 In this case, by contrast, the offending instrumentality — the neutral wire — was undisputedly part of APCo’s equipment. Like the chain in
 
 Bloom,
 
 the neutral wire was an integral part of a system that was “owned by and under the supervision and control of the [defendant].” 197 Ala. at 497, 73 So. at 88. The management-and-control prong is satisfied in this case.
 

 The trial judge acknowledged that if the doctrine of
 
 res ipsa loquitur
 
 applies in this case, “then [her] order is clearly wrong.” Because we hold that the doctrine does apply, we must hold that the trial court erred in entering a summary judgment for APCo as to the claim that it negligently “constructed, operated, or maintained its power lines.” To- that extent, the judgment is reversed, and the cause is remanded.
 

 B. Wantonness
 

 We affirm the summary judgment, however, on the wantonness claim.
 

 “ Wantonness’ is statutorily defined as ‘[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others.’ Ala.Code 1975, § 6-ll-20(b)(3). ‘Wantonness’ has
 
 *368
 
 been defined by this Court as the conscious doing of some act or the omission of some duty, while
 
 knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result.”
 

 Alfa Mut. Ins. Co. v. Roush,
 
 723 So.2d 1250, 1256 (Ala.1998) (emphasis added).
 

 To overcome a properly supported motion for a summary judgment challenging the sufficiency of evidence of wantonness, the nonmovant “must present
 
 substantial evidence
 
 showing that [the defendant’s] breach of a duty to them was the result of a conscious action that proximately caused them damage.”
 
 Carter v. Chrysler Corp.,
 
 743 So.2d 456, 463 (Ala.Civ.App.1998) (emphasis added).
 
 Proof of
 
 wantonness is not aided by the doctrine of
 
 res ipsa loquitur. Smith v. Kennedy,
 
 43 Ala.App. 554, 564, 195 So.2d 820, 829 (1966) (“The doctrine of res ipsa loquitur cannot be invoked to prove wilful or wanton ... misconduct.”).
 

 The problems with George’s wantonness claim are related to, and illustrated by, his faltering attempts to prove his negligence claim without the aid of the doctrine of
 
 res ipsa loquitur.
 
 Benedict opined that improper grounding caused this accident. However, the only supporting evidence presented on that issue — other than the fact of the injury itself
 
 [3]
 
 —was a manual of guidelines promulgated by
 
 APCo
 
 for the grounding of power poles, specifying the placement of the grounding rods one foot below the ground surface and in “undisturbed soil not less than [one foot] outside the [pole] hole.” Benedict faulted APCo for placing the grounding rods directly against the power poles and for, in at least one instance, leaving two or three feet of a rod protruding above the ground.
 

 APCo presented testimony that its grounding system complied with, or exceeded, the National Electrical Safety Code (“the Code”), which specifies a “total” of “not less than four [grounding rods] in each 1.6km (mile) of the entire line” and a “resistance to ground not exceeding 25 [ohms].” APCo’s placement of a grounding rod at each power pole exceeded the Code’s four-rods-per-mile specification. Without objection by George, APCo offered evidence that its own post-accident testing of the grounding rods between the substation and the accident site revealed an average resistance of 1.41 ohms per ground, and, at no point, resistance exceeding 25 ohms.
 

 Assuming — without deciding — that Benedict’s testimony was admissible, and that the placement of the grounding rods had something to do with this accident, the evidence falls short of substantial evidence of wantonness. There is no evidence of APCo’s knowledge that “injury [would] likely or probably result” from its placement of the grounding rods. No evidence was adduced of injuries from such a placement scheme on
 
 any
 
 electrical-distribution system. Simply put, the circumstances that surround this accident do not lend themselves to a claim of wantonness.
 

 For these reasons, a summary judgment was properly entered for APCo on the
 
 *369
 
 wantonness claim. The judgment is, therefore, to that extent, affirmed.
 

 III. Conclusion
 

 In summary, the judgment in favor of APCo on the wantonness claim is affirmed. The judgment in favor of APCo on the negligence claim is reversed, and the case is remanded for further proceedings consistent with this opinion.
 
 [4]
 

 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
 

 COBB, C.J., and SEE, LYONS, STUART, SMITH, BOLIN, PARKER, and MURDOCK, JJ., concur.
 

 [1]
 

 . George has no memory of the accident.
 

 [2]
 

 . Among the facts the parties concede were in dispute was the identity of the line George contacted. Although numerous witnesses testified that George contacted the
 
 neutral
 
 wire, APCo took the position — which it has pressed with varying degrees of vigor throughout this litigation — that George contacted a
 
 primary
 
 line. For purposes of review of the summary judgments on this appeal, however, APCo does not challenge the evidence that George made contact with the neutral wire.
 

 [3]
 

 . Benedict performed no test on the grounding system, appearing, instead, to base his criticism of the system on the fact that an injury had occurred. In that connection, the following colloquy transpired:
 

 "Q. [By APCo's counsel:] Do you know if there was a good solid ground contact in this case?
 

 “A.
 
 [By Benedict:] It doesn’t sound like it.
 

 “Q. What do you mean 'doesn't sound like it'?
 

 "A.
 
 Because he got electrocuted."
 

 (Emphasis added.)
 

 [4]
 

 . Having held as we do on the issues discussed in this opinion, we deem it unnecessary to address other matters discussed in the parties’ briefs.