MURDOCK, Justice
(concurring specially).
In addition to its reliance upon Justice Jones’s dissenting opinion in Strozier v. Marchich, 380 So.2d 804 (Ala.1980) (a reliance that is discussed in the main opinion), the dissenting opinion issued by then Chief Justice Cobb on June 3, 2011, and attached as an appendix to the opinion issued today, would perpetuate the confusion and/or conflation of the concepts of intent and wantonness by the manner in which it described and then analyzed various hypothetical situations involving the discharge of a firearm into a crowd. Before addressing these hypotheticals and other statements in then Chief Justice Cobb’s dissenting opinion that would have the same effect, I will first address the difference between intent and wantonness.
*96 Wantonness entails the intent to do an act, but not the intent to produce the consequence or injury for which the actor is to be held responsible. As noted, “wantonness” has been defined by our cases as the “‘conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result.’” George v. Alabama Power Co., 13 So.3d 360, 368 (Ala.2008) (quoting Alfa Mut. Ins. Co. v. Roush, 723 So.2d 1250, 1256 (Ala.1998) (emphasis omitted; emphasis added)); Norfolk Southern Ry. v. Johnson, 75 So.3d 624 (Ala.2011) (to like effect). As noted in the main opinion, wantonness involves an “ ‘ “act done or omitted with knowledge of the probable consequence, and with reckless disregard• of such consequence.” ’ ” 96 So.3d at 85 (quoting Porterfield v. Life & Cas. Co. of Tennessee, 242 Ala. 102, 105, 5 So.2d 71, 73 (1941), quoting in turn another case). Specific intent to injure the plaintiff is not an element of wantonness, which has been statutorily defined as ‘“[cjonduct which is carried on with a reckless or conscious disregard of the rights or safety of others.’ ” Alfa Mut. Ins. Co. v. Roush, 723 So.2d at 1256 (quoting Ala.Code 1975, § 6-11-20(b)(3)).[14]
In contrast, the concept of intent does not apply to conduct carried on by the actor merely with an awareness of the “probability” of a given consequence. Instead, the law reserves the term “intent” for circumstances where the actor desires or is substantially certain of the injury to result from his or her act. As § 8A of the Restatement (Second) of Torts (1965) explains, “[t]he word ‘intent’ is used throughout the Restatement of this Subject to denote that the actor desires to cause the consequences of his act, or that he believes that the consequences are substantially certain to result from it.” (Emphasis added.) [15]
The comments to § 8A of the Restatement (Second) of Torts further explain:
“a. ‘Intent,’ as it is used throughout the Restatement of Torts, has reference to the consequences of an act rather than the act itself.... ‘Intent’ is limited, wherever it is used, to the consequences of the act.
“6. All consequences which the actor desires to bring about are intended, as the word is used in this Restatement. Intent is not, however, limited to consequences which are desired. If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result. As the probability that the consequences will follow decreases, and becomes less than substantial certainty, the actor’s conduct loses the character of intent, and becomes mere recklessness, as defined in § 500.”
(Emphasis added.)
Comment f to Restatement (Second) of Torts § 500 (1965) discusses the difference *97 between intentional misconduct and recklessness:
“f Intentional misconduct and recklessness contrasted. Reckless misconduct differs from intentional wrongdoing in a very important particular. While an act to be reckless must be intended by the actor, the actor does not intend to cause the harm which results from it. It is enough that he realizes or, from facts which he knows, should realize that there is a strong probability that harm may result, even though he hopes or even expects that his conduct will prove harmless. However, a strong probability is a different thing from the substantial certainty without which he cannot be said to intend the harm in which his act results.”
(Emphasis added.)
American Jurisprudence explains it this way:
“An individual may undertake an intentional act, and if the act is undertaken without an intent to harm or a substantial certainty that harm will result from the act, the actor is not guilty of an intentional tort. Instead, in such a situation, the activity is properly classified as reckless disregard of safety or reckless misconduct. To be reckless, the act must be intended by the actor; but, at the same time, the actor does not intend to cause the harm which results from it. Thus, reckless misconduct results when a person, with no intent to cause harm, intentionally performs an act so unreasonable and dangerous that he or she knows or should know it is highly probable that harm will result.... Nevertheless, existence of probability is different from substantial certainty, which is an ingredient of the intent to cause harm which results from the act.”
57A Am.Jur.2d Negligence § 276 (2004) (emphasis added; footnotes omitted).
Perhaps the simplest explanations come from the hornbook authored by Professor Prosser:
“The three most basic elements of [the] most common usage of ‘intent’ are that (1) it is a state of mind, (2) about consequences of an act (or omission) and not about the act itself, and (3) it extends not only to having in the mind a purpose (or desire) to bring about given consequences but also having in mind a belief (or knowledge) that given consequences are substantially certain to result from the act.”
W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 8, p. 34 (4th ed.1984) (first two emphases in original; other emphasis added; footnotes omitted).[16] We also are provided with this very helpful distinction by Professor Pros-ser:
“[T]he mere knowledge and appreciation of a risk — something short of substantial certainty — is not intent. The defendant who acts in the belief or consciousness that the act is causing an appreciable risk of harm to another may be negligent, and if the risk is great the conduct may be characterized as reck *98 less or wanton, but it is not an intentional wrong.”
Prosser, § 8, p. 36 (emphasis added).
At odds with the foregoing fundamental principles, then Chief Justice Cobb made reference in her dissenting opinion to wantonness as “generalized intentional conduct.” Appendix to main opinion, 96 So.3d at 101. She then posited the following series of hypothetical circumstances and outcomes:
“Thus, if one who is in a crowd accidently drops a loaded firearm that discharges and injures another, the actionable tort is negligence. If that person intentionally discharges the firearm into a crowd and injures another, the actionable tort is wantonness. And if that person intentionally fires the firearm at a particular person and injures that person the tort becomes assault and battery. Unlike the tort of negligence, in both wantonness and assault and battery, there is intent to cause injury. That is, in both the wanton shooting and the assault and battery, there is intentional conduct.”
Appendix, 96 So.3d at 101 (some emphasis added). In so doing, the Chief Justice conflated the concepts of intent and wantonness.
The last sentence in the above-quoted excerpt from then Chief Justice Cobb’s dissenting opinion — that “in both the wanton shooting and the assault and battery, there is intentional conduct” — is true, but only to the extent that one might consider the word “conduct” narrowly as a reference to the act, rather than to the consequences of the act. Furthermore, the next to last sentence of the excerpt — the statement that “in both wantonness and assault and battery, there is intent to cause injury” — is simply wrong. Wantonness does not contemplate that the actor intends the result achieved by their act. It is only necessary that the injury resulting from the act is “likely” or “probable.” Again, the “existence of probability is different from substantial certainty,” 57A Am.Jur.2d Negligence § 276 (2004), and “[t]he defendant who acts in the belief or consciousness that the act is causing an appreciable risk of harm to another may be negligent, and if the risk is great the conduct may be characterized as reckless or wanton, but it is not an intentional wrong.” Prosser, § 8, p. 36.
The most specific concern expressed by then Chief Justice Cobb with respect to her series of hypotheticals is with reference to the situation where, as she put it, “[a] person intentionally discharges [a] firearm into a crowd and injures another.” Appendix, 96 So.3d at 101. Chief Justice Cobb was concerned that a two-year statute of limitations would necessarily apply in this situation because, she concluded, “the actionable tort is wantonness.” Id. Consistent with all the foregoing authorities, however, if the actor had as his or her purpose to injure someone in the crowd, then he or she is guilty of an intentional tort, not merely an act of wantonness. Likewise, the location of the crowd in relation to the actor and the density of the crowd might be such that the jury may infer that the actor knew that it was “substantially certain” that someone in the crowd would be injured, given the manner in which the actor discharged the firearm.[17] Under all the foregoing authori *99 ties, the law would treat either circumstance as involving intentional conduct, and, therefore, the concern expressed by then Chief Justice Cobb in the dissenting opinion regarding the application of a two-year statute of limitations would be misplaced.

. See also Alabama Pattern Jury Instructions: Civil 29.00 (2d ed.1993) (Cum.Supp. 2010): "[An actorj’s conduct is wanton if [he/she] consciously acts of fails to act with a reckless or conscious disregard of the rights or safety of others and [he/she] is aware that harm will likely or probably result.” (Emphasis added.)

. Section 1 of the Restatement (Third) of Torts (2010) explains that
"[a] person acts with the intent to produce a consequence if:
"(a) the person acts with the purpose of producing that consequence; or
"(b) the person acts knowing that the consequence is substantially certain to result.”
(Emphasis added.)

. Professor Prosser goes on to explain that another source of "confusion” is the "failure to distinguish between (1) the factual elements essential to a finding of intent,” as quoted in the text of this writing, and "(2) the elements of proof and argument that advocates and factfinders may bring to bear in addressing the question whether those factual elements are present in a given case.” Pros-ser, § 8, pp. 35-36. As to the latter, Prosser explains that one of the common ways of proving the factual elements is to show that "given the circumstances disclosed in the evidence, a reasonable person in the actor’s position would have known that the consequences in question were substantially certain to follow [his or her] act.” Id., at 36.

.
"The movement of the finger which fires a gun is the same, whether it takes place in a crowded city, or in the solitude of the Mojave Desert, and regardless of the actor’s state of mind about the consequences. But the legal outcome will depend on the actor’s surroundings and the actor’s state of mind....
[[Image here]]
*99 "... [Intent] extends not only to those consequences which are desired, but also to those which the actor believes are substantially certain to follow from what the actor does. The actor who fires a bullet into a dense crowd may fervently pray that the bullet will hit no one, but if the actor knows that it is unavoidable that the bullet will hit someone, the actor intends that consequence.”
Prosser, § 8, p. 35.